# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1903.

## Kennedy *v.* The State.

### *Indictment for Murder.*

1. *Homicide: charge as to imminent peril.*—On a trial under an indictment for murder, where it is shown that the deceased was killed by the defendant at the gate leading into the defendant's yard, and there was evidence tending to show that the defendant appeared to be in imminent peril and that he believed that he was about to be shot by the deceased, a charge is free from error and should be given at the request of the defendant, which instructs the jury that "If the defendant shot under the *bona fide* belief that his life was in danger and he had under all the circumstances reasonable cause to believe that he was in imminent danger at the moment the shot was fired, it would be immaterial whether there was such actual danger or not.

2. *Same; charge as to threats and demonstrations by deceased.* On a trial under indictment for murder, where the deceased was killed at nightfall at a gate leading into the defendant's yard, and there was evidence tending to show that the deceased had threatened to take the defendant's life, a charge is erroneous and properly refused which instructs the jury that "Going to defendant's house after night and calling defendant to his gate by a third person, following threats and conduct indicating a purpose to take defendant's life, was itself, if true, a demonstration against defendant which the jury may consider in connection with all the evidence as to whether the shooting was in self-defense."

3. *Homicide; charge as to presumption of malice from use of deadly weapon.*—In the trial of a case under an indictment for murder, where it is shown that the deceased was killed by being shot with a pistol, charges are erroneous and properly re-

[Kennedy v. The State.]

fused which instruct the jury that "'where facts and circumstances of the killing are in evidence, a presumption of malice should not be drawn from the use of a deadly weapon alone," but should be determined from all the evidence.

4. *Charge as to reasonable doubt.*—In the trial of a criminal case, a charge is erroneous and properly refused that instructs the jury that "If they have a reasonable doubt growing out of any part of the evidence as to whether the killing was done in self-defnese, they should find the defendant not guilty."

5. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where it is shown that the deceased was in love with the defendant's daughter, who was at that time married, and that the defendant had forbidden the deceased to see his daughter, it is permissible to introduce .testimony to prove the facts that the deceased and the defendant's daughter were engaged to be married, that the deceased had had carnal knowledge of her and wanted her to run away with him and be married before she obtained a divorce from her husband, that the defendant knew of their purpose to marry and opposed it and opposed their associating together before she was divorced, and that he had been told that the deceased had, two days before the homicide, assaulted his daughter.

6. *Same; same.*—In such a case, where it is shown that the deceased, at the time he was killed was at the gate of the defendant in company with two other persons, it is permissible for one of the persons who was with the deceased at the time he was killed, to testify that on the afternoon before the homicide the defendant had told him that the deceased told the defendant and his daughter that the witness's cousin, who was a sister of the other person present at the time of the killing, had gone to the deceased's room late at night, and embracing him, begged him not to marry the defendant's daughter; such evidence having a tendency to account for the presence of the two persons with the deceased at the time of the killing.

7. *Same; evidence as to good character of deceased.*—On a trial under an indictment for murder, where the character of the deceased had not been inquired into, and no attack had been made thereon by the defendant, it is not permissible for the State to introduce evidence to prove deceased's character; and this is true, although there had been introduced evidence that the deceased had criminally assaulted the daughter of the defendant and had threatened to take the defendant's life.

8. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder. the fact that the deceased had told a witness on the day the killing occurred that he did not feel well, is impertinent and inadmissible in evidence.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. J. A. BILBRO.

The appellant in this case, Thomas H. Kennedy, was indicted and tried for the murder of John Young, was convicted of murder in the second degree and sentenced to the penitentiary for ten years.

The State introduced as a witness one James Arnold, who testified that he was present at the time John Young was killed; that he and one Lee Grider, who was cousin of the witness Arnold, went with John Young to the house of the defendant about dark on Tuesday, May 19, 1903; that on arriving at the defendant's gate, Arnold called to the defendant, and in answer to the latter's inquiry as to who it was, replied that it was Arnold; that the defendant then walked out to his gate, and when near it, suddenly fired on Young with a pistol; that Young turned and fled and the defendant fired a second time; that about the time the defendant fired, he applied a very opprobrious epithet to Young and said, "I told you I would kill you"; that the deceased was shot twice, once in his chest and again in the back, and fell some thirty yards from the defendant's gate and died in about a half hour from the effects of said wound; that at the time the defendant fired, Young, the deceased, was standing at or near the gate post and had his arms resting on the railing or post. This witness further testified that at the time he went with the deceased to defendant's house, he did not know of any ill feeling between the defendant and the deceased, and that he did not hear of any threats between them.

The State also introduced as a witness one Lee Grider, who was a cousin of the witness Arnold, and the witness Grider testified to substantially the same facts as did the witness Arnold.

The defendant as a witness in his own behalf testified that on the night of the killing, when he was called out to his gate, he was in his room, and upon being told that it was Arnold who called him, he said he would go out if it was Arnold; that he picked up his pistol from the mantel and walked out towards the gate; that as he went

towards the gate, he discovered Young, the deceased, who was in a stooped or crouching position behind the gate post, and upon Young rising from his crouched position and at the same time seeming to draw a pistol from his hip pocket, the defendant fired upon him, and that as Young turned he fired a second time; that he, the defendant, did not know that Young was at the gate until he saw him; that he did not make the remark to which the witness Arnold testified at the time he fired the fatal shot; that after shooting the deceased, he turned to Arnold and asked him what this meant.

The defendant's daughter, Mrs. Sallie Cowan, was introduced as a witness and testified that on the night of the killing, as her father left the house she followed immediately behind him and saw the killing.    Her testimony as to the circumstances of the killing was substantially the same as that of the defendant.

There was other evidence introduced which tended to show that a few months previous to the killing, John Young came to Hollywood, in Jackson county, where the homicide occurred; that for a time he boarded with the defendant; that while at the defendant's house an attachment sprung up between him and the defendant's daughter, Mrs. Sallie Cowan; that Mrs. Cowan was, at that time, married, but had been separated from her husband for several years, but no divorce had been obtained; that the deceased and Mrs. Cowan became engaged to be married upon condition that Mrs. Cowan obtained her divorce and the deceased would furnish Mrs. Cowan's father with proper references as to his character; that, thereafter, the deceased and the defendant had a difficulty, and the deceased removed his boarding place from the defendant's house to the residence of James Arnold, and the defendant forbade him to see Mrs. Cowan at his home; that after this occurrence Mrs. Cowan frequently saw the deceased at the home of a friend; that the defendant objected to the deceased seeing his daughter and objected to her marriage until after she had obtained her divorce.    Mrs. Cowan, during her examination as a witness, testified that on the Sunday afternoon before the killing, the

deceased, while walking with her in the woods, assaulted her and had carnal knowledge of her; that on the next morning the deceased saw her and begged her to run away with him at once and be married; that on Monday night before the killing on Tuesday night, she told her father of the deceased having assaulted her.

There was evidence introduced for the defendant tending to show that the deceased had made repeated threats to take the life of the defendant, and that these threats had been communicated to the defendant; that the deceased attempted to borrow a pistol from different parties for the express purpose of killing the defendant, and that on the day of the homicide he was seen with a pistol.

After the defendant had introduced his testimony and rested, the State again introduced James Arnold and asked him the following question: "What it was that the defendant said to him at defendant's home in the presence of Mrs. Cowan about John Young, the deceased, on the afternoon of the same day of the killing?" The witness answered as follows: "He told me that John Young had told Mrs. Cowan that Miss Grider (sister of Lee Grider) had come to his room at 3 o'clock in the morning, put her arms around his neck, kissed him and begged him not to marry Mrs. Cowan, but to marry her." The defendant objected to this evidence as being immaterial, irrelevant and hearsay. The court overruled the defendant's objection, and to this ruling the defendant duly excepted.

The deposition of Mrs. Joel Arnold was introduced in evidence by the State. One of the interrogatories propounded to this witness was as to whether or not she knew the general character of John Young in the community of Hollywood, and was it good or bad? Her answer to this interrogatory was as follows: "Yes, sir, I know he was a perfect gentleman. I never heard a bad word against him. He proved up to be a gentleman." The defendant objected to this question and moved to exclude the answer from the jury, upon the ground that it was immaterial and irrelevant to any issue. The court overruled the objection, refused to ex-

clude the answer from the jury, and to each of these rulings the defendant separately excepted.

One of the interrogatories propounded to this witness was whether or not she knew where the deceased was during Tuesday, the day of the homicide? In her answer to this question she stated that he was at her house during the day and staid in his room until late in the afternoon when he went to Hollywood, "and said he did not feel well." The defendant objected to the portion of this witness's answer to the interrogatory in which she said that the deceased had said that he did not feel well, and moved the court to exclude the same, upon the ground that it was immaterial, irrelevant and hearsay. The court overruled the objection and motion, and the defendant duly excepted.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the defendant shot under a *bona fide* belief that his life was in danger and had under all the circumstances reasonable cause to believe that he was in imminent danger at the moment the shot was fired, it would be immaterial whether there was such actual danger or not." (2.) "Going to the defendant's house after night and calling the defendant to his gate by a third person, following threats and conduct indicating a purpose to take defendant's life, was itself, if true, a demonstration against defendant which the jury may consider in connection with all the evidence as to whether the shooting was in self-defense." (3.) "Where the facts and circumstances of the killing are in evidence, the presumption of malice should not be drawn from the use of a deadly weapon alone. The jury should look to all the evidence, and unless from all the evidence the jury are satisfied beyond a reasonable doubt that the killing was malicious, the defendant should not be convicted of murder." (4.) "If the jury have a resonable doubt growing out of any part of the evidence, as to whether the killing was done in self-defense, they should find the defendant not guilty." (5.) "In this case malice should not be in-

[Kennedy v. The State.]

ferred from the use of a deadly weapon, but should be determined from all the evidence." (6.) "The court charges the jury that if deceased went to the house of defendant at night, without the knowledge or invitation of defendant, and defendant believed and had good cause to believe from the threats and conduct of deceased that his coming there was to carry out his threats to take defendant's life, and defendant was called to his gate by Arnold and came suddenly into the presence of Young in the dark, and at that moment from all the circumstances defendant believed that he was in imminent peril to his life or of great bodily harm, and was without fault in bringing on the difficulty, the defendant had a right to fire in self-defense, whether in fact the deceased was making an effort to draw a pistol or not."

VIRGIL BOULDIN, for appellant.—The court erred in allowing the State to prove the good character of the deceased. The defendant did not put his character in issue.—*Jimmerson v. State*, 133 Ala. 18; *Hussey v. State*, 87 Ala. 121.

No question of retreat need in this case enter into the consideration of the necessity to shoot, because the defendant was in the curtilage of his dwelling from which the law held him to no duty to retreat.—*Naugher v. State*, 105 Ala. 26.

The first charge requested by the defendant asserted a correct proposition of law and was applicable to the facts of the present case.—*Eiland v. State*, 52 Ala. 322; *Henson v. State*, 112 Ala. 41; *Hampton v. State*, 45 Ala. 82; *Martin v. State*, 47 Ala. 564.

Charges as to the presumption of malice, not necessarily arising from the use of a deadly weapon should have been given.—*Eiland v. State*, 52 Ala. 322; *Henson v. State*, 112 Ala. 41; *Hampton v. State*, 45 Ala. 82; *Martin v. State*, 47 Ala. 564.

MASSEY WILSON, Attorney-General, for the State.

It was proper for the court to allow the State to prove the good character of the deceased. As a matter of fact the character of the deceased had been attacked. If di-

rect testimony that deceased had been guilty of a rape on the person of Mrs. Cowan, did not constitute an attack on his character, it may well be asked what is sufficient to bring the character in question. The offense charged is one of the most serious known to the law, and may be punished by death. Certainly, his character was in evidence, and as said in *Hussey v. State,* 87 Ala. 121, 134, "It is plain that the State could rebut this evidence by proof of defendant's reputation for peace and quiet."—*Mitchell v. State,* 133 Ala. 65; *Lusk v. State,* 129 Ala. 1.

The first charge requested by the defendant was erroneous in that it omitted all reference to the fact of the evidence which showed that the defendant was at fault in bringing on the difficulty.—*Jackson v. State,* 94 Ala. 85.

The second charge requested by the defendant, and which was refused, was erroneous for singling out a portion of the evidence and directing the jury's attention thereto.—*Campbell v. State,* 81 Ala. 88; *Stone v. State,* 105 Ala. 60.

It is certainly the law that malice is presumed from the use of a deadly weapon, unless the evidence rebuts such presumption, and it is always a question for the jury to determine, whether malice did exist and this conclusion may be reached after a consideration of the whole evidence, or there may be no evidence other than the presumption which the law raises from the use of the deadly weapon. Both of these charges were erroneous, for the reason assigned, and for the further reason that they were invasive of the province of the jury.—*Hadley v. State,* 55 Ala. 31; *Sylvester v. State,* 72 Ala. 201, 206; *Harkness v. State,* 129 Ala. 71, 79.

McCLELLAN, C. J.—Charge 1 requested by defendant is not abstract: there was evidence tending to show that defendant was in imminent peril to all appearances and that he believed that he was about to be shot by Young when he shot Young. The charge is a correct statement of the law, that it is immaterial in such case whether the apparent danger was in fact real danger. It deals only

with this question. It does not affirm that on the facts postulated, viz., the apparent danger and defendant's belief in its reality, the defendant had a right to shoot, nor that he should be acquitted. It does not profess to deal with the other condition to defendant's right to kill, namely, his freedom from fault in bringing on the difficulty; nor in our opinion, has it any tendency to mislead the jury to the conclusion that if he was or reasonably appeared to be presently in danger of life or grievous bodily harm, and believed he was in such danger, he had the right to shoot whether he was the aggressor or not. The charge does not deal with the subject of aggression, nor purport to state the law in that connection. It deals only with the character of danger as being real, or apparent only, which is one of the three elements of self-defense in ordinary cases, the other two being freedom from fault and inability to retreat, and one of the two in this case as the defendant was within the curtilage of his castle, and hence under no duty to retreat. It has no bearing upon the inquiry of the aggression *vel non,* and we cannot believe it would have misled the jury to a pretermission of that inquiry. The court erred in refusing it.

We find no error in the rulings of the court refusing to give other charges requested by the defendant.

On another trial the inquiry into the relations of Young, the deceased, and Mrs. Cowan, defendant's daughter, and defendant's attitude in that connection should be confined to the facts that they were engaged to be married, that Young had had carnal knowledge of her, and wanted her to run away with him and be married before she obtained a divorce from her husband, and that defendant knew of their purpose to marry and opposed it, and opposed their associating together before she was divorced and that he had been told that Young had, two days before the homicide, assaulted his daughter. This much of the relations, etc., of Young and Mrs. Cowan was pertinent as throwing light upon the inquiry as to who was the aggressor, upon the reasonableness of Kennedy's belief, if he had such belief, that Young was about to shoot him, and, on the other

hand, as tending to show motive on Kennedy's part to kill Young; but further particulars of this association tend more to multiply issues than to shed any legitimate light on the homicide.

Evidence should be received of the story Young, according to Kennedy, had told Mrs. Cowan concerning Miss Grider. Such evidence would tend to account for the presence of Lee Grider, her brother, and Arnold, her cousin, and Young at Kennedy's on the occasion of the homicide.

We do not find any predicate in the evidence for proof of Young's good character. No evidence on the subject had been adduced when Mrs. Arnold was interrogated about it, or ever was except hers against defendant's objection. Evidence that two days before his death he assaulted Mrs. Cowan is not evidence against his standing and reputation in the community; the community knew nothing about that assault. Nor did the evidence of his threats against Kennedy at all import that his character was bad. No attack, in other words, had been made upon his character, and evidence should not have been received to prove that he was a man of good character—a gentleman, "proved" or otherwise.

The fact that Young told Mrs. Arnold on Tuesday, the day of the night of the homicide, that "he did not feel well" was impertinent.

Reversed and remanded.

## *Indictment for Murder.*