## THOMAS KELLY *et al.*

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1907.*

1. MURDER—*People cannot prove reputation of the deceased for peaceableness until it is attacked.* In a trial for murder the general reputation of the deceased as a peaceable man is presumed to be good until the contrary is shown, and unless the defendants attack such reputation no evidence can be introduced by the People on that subject, notwithstanding self-defense is relied upon.

2. SAME—*what is not an attack on reputation of deceased for peaceableness.* Evidence brought out by the defendants on cross-examination, to the effect that the deceased was a large, muscular man and capable of taking care of himself, is not an attack upon his reputation for peaceableness, such as justifies the admission for the People of evidence that such reputation was good, notwithstanding the defendants attempted to show by the witness that the deceased was at one time a sparring partner for a pugilist, which the witness denied. (*Davis* v. *People,* 114 Ill. 86, distinguished.)

HAND, C. J., and SCOTT and CARTER, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

SYMMES & KIRKLAND, (JOHN A. ROSE, of counsel,) for plaintiffs in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (JAMES J. BARBOUR, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a writ of error sued out to the criminal court of Cook county to reverse a judgment of conviction for murder, rendered at the March term, 1907, against plaintiffs in error.

Thomas Kelly, Ole Olson, Lant Maloney and Charles Nyquist were jointly indicted in Cook county for the murder of Joseph F. Messenie. Olson and Kelly were convicted of murder, and their punishment was fixed by the jury at imprisonment in the penitentiary for the term of fifteen years each. Maloney and Nyquist were found guilty of manslaughter. A motion for a new trial was sustained as to Maloney and Nyquist and overruled as to Kelly and Olson, who sue out this writ of error and assign numerous errors on the record.

In the view we take of this case it will not be necessary to make an extended statement of the facts, nor will it be necessary to consider all of the assignments of error that have been argued in the briefs.

After the prosecution had offered evidence tending to make out a case against plaintiffs in error, evidence was offered on behalf of the accused in support of the claim that the killing of the deceased was done in necessary self-defense. The evidence on behalf of the prisoners tended to show that the deceased had committed a serious assault upon Olson about four hours before the fatal difficulty, and the version given by plaintiffs in error of the difficulty in which the deceased was killed tends to show that the deceased was the aggressor on this occasion also. The evidence of plaintiffs in error was confined to the question of self-defense. The reputation of the deceased for peaceableness was not attacked by plaintiffs in error. After plaintiffs in error had rested their case the People called Erich H. Ladish in rebuttal, and he testified as follows: "I live 632 Larrabee street. Am a druggist. Have been at 632 Larrabee street since April, 1894. I knew Joe Messenie in his lifetime very well,—something like four or five years. I knew his reputation for peace and quiet.

Q. "What was that reputation?

Mr. Symmes: "I object to the State's showing the reputation of the deceased, for the reason that the defendants

have not attacked his reputation for peace and quiet and because it is not rebuttal.   (Objection overruled;  exception by defendant.)

A. "Good."

The State was permitted, over the objection of plaintiffs in error, to introduce Hamm, Ford, Killen, Weber and Boch, all of whom testified that the general reputation of the deceased for peaceableness was good.   The court instructed the jury that if they believed that the deceased, Joseph Messenie, at and before the commission of the crime charged in the indictment against the defendants, was of peaceable, quiet and inoffensive disposition and a man of good moral character, then these facts are to be received and weighed, together with the other evidence, in determining whether the defendants, or any of them, are guilty of the crime charged in the indictment.   The errors assigned upon the admission of this evidence and the giving of this instruction may be considered together.

It is contended by the State that evidence of the general reputation of the deceased for being a peaceable and quiet man was competent upon two grounds, namely, because the defendants sought to prove that the killing was done in self-defense, and also that it was proper in rebuttal of proof offered by defendants of the character of deceased.

The exact question whether the State can introduce evidence of the good character of the deceased for peaceableness, in rebuttal, when defendant claims that the deceased assaulted him in such a manner as to justify a resort to self-defense, has, so far as our examination has disclosed, not been passed upon by this court.   The question is therefore to be determined from a consideration of the principles of the common law as evidenced by the judicial decisions outside of this State.   In the American and English Encyclopedia of Law (vol. 25,—2d ed.—p. 282,) it is said: "The general rule is that the prosecution cannot introduce evidence to sustain the reputation of the deceased for peace and quiet-

ness until the defendant makes an attack upon him." In 21 Cyc. 907, it is said: "Ordinarily the character or reputation of the deceased person is not involved in the issue of murder, and proof relative thereto is generally inadmissible." In support of this text cases are cited in the notes from Alabama, California, Delaware, Georgia, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Montana, New York, North Carolina, Pennsylvania, Tennessee, Texas and Wisconsin. Again, on page 908, (21 Cyc.) the following qualifications of the rule above stated are given: "The general rule excluding evidence of the character of the deceased applies with equal force against the State and the defendant. The State will not be permitted to offer primary evidence of the character of the deceased for morals or for peace and quiet although defendant offers evidence of his own good reputation; but where defendant attempts to show that the deceased was a violent and dangerous man the State may properly offer proof of his peaceable and law-abiding character, although defendant does not attack the general reputation of deceased for peaceableness and good disposition." In 3 Greenleaf (sec. 27) the rule is laid down as follows: "In regard to the character of the person on whom the offense was committed, no evidence is, in general, admissible, the character being no part of the *res gestæ.*" To the same effect is Elliott on Evidence, sec. 2722. In McClain on Criminal Law (vol. 1, sec. 423,) the rule is laid down as follows: "Evidence of the character of the deceased as a quiet and peaceable man is not admissible as original evidence in behalf of the prosecution. The general character of the deceased as a violent and quarrelsome man cannot be shown in behalf of the defendant except as bearing on the question of self-defense, as already explained. Where such evidence is admitted on behalf of the defendant the State may, in rebuttal, prove that the deceased was of a peaceable character." In Bishop on Criminal Procedure (vol. 2, sec. 612,) the rule is stated

as follows: "It is never competent for the prosecution to show, in the first instance, against the defendant, that the person slain was of good or peaceable character, but such evidence may be given in rebuttal if the opposite has been testified to by the defense."

A leading case on this subject is *State* v. *Potter,* 13 Kan. 310. Potter was on trial for murder. He relied on self-defense. The trial court allowed the State to introduce evidence of the character of the deceased for peace and quiet. In disposing of this question the Supreme Court of Kansas, speaking by Mr. Justice Brewer, said: "On the trial, and before closing their case, the prosecution was permitted, over objection, to ask witnesses who had testified that they knew the deceased, this question: 'State if you knew his general reputation for being a peaceable, quiet and law-abiding citizen,' and the witnesses testified that he was a peaceable, quiet and law-abiding man. No attack was made by defendant at any time during the trial upon the character of the deceased and no attempt made to show that he was a quarrelsome or turbulent man. The question, then, is fairly presented whether the prosecution, on a trial for murder, may in the first instance, and as a part of the case, show the character and reputation of the deceased. We do not understand counsel for the State as claiming that such testimony is admissible in all cases, but only in cases where there is doubt as to whether the killing was done in self-defense and where such testimony may serve to explain the conduct of the deceased and is therefore a part of the *res gestæ.* In such cases it is said that the authorities hold that the defendant may show the bad character and reputation of the deceased as a turbulent and quarrelsome man. And if the defendant may show that the deceased was a known quarrelsome, dangerous man, why may not the State show that he was a known peaceable, quiet citizen? The argument is not good. The books are full of parallel cases. The accused may in some cases show his own good character.

A party can never offer evidence to support a witness' credibility until it is attacked. The reasons for these rules are obvious. Such testimony tends to distract the minds of the jury from the principal question and should only be admitted when absolutely essential to the discovery of the truth. Again, the law presumes that a witness is honest, that a defendant has a good character and that the party killed was a quiet and peaceable citizen, except so far as the contrary appears from the testimony in the case; and this presumption renders it unnecessary to offer any evidence in support thereof. No authorities have been cited sustaining the admission of such testimony, and the following are in point against it,"—citing cases.

In *State* v. *Woodward,* 191 Mo. 617, the Supreme Court of that State expressed the following view: "It is insisted that the court erred in permitting the State to prove the good reputation of the deceased. This testimony, under the rules of evidence, could only be admissible to rebut the testimony elicited by the appellant affecting the reputation of the deceased. Unless the reputation of the deceased was put in issue by the appellant, then this testimony was clearly inadmissible." This case was not reversed, because the defendant had opened up the question of the reputation of the deceased. The same rule is announced in the decisions of many other courts, and among them the following may be cited: *Gregory* v. *State,* 94 S. W. Rep. 1041, (Texas Court of Crim. App.); *Bowles* v. *Commonwealth,* 103 Va. 816; *Kennedy* v. *State,* 140 Ala. 1; *Jimmerson* v. *State,* 133 id. 18; *Pound* v. *State,* 33 Ga. 88; *People* v. *Bezy,* 67 Cal. 223; *Parker* v. *Commonwealth,* 96 Ky. 112; *People* v. *Webster,* 139 N. Y. 73; *State* v. *Hogue,* 51 N. C. 381; *Commonwealth* v. *Ferrigan,* 44 Pa. St. 386; *Brucker* v. *State,* 19 Wis. 539; *State* v. *McCarthy,* 43 La. 541; *State* v. *Thawley,* 4 Harr. (Del.) 562; *State* v. *Fields,* 14 Me. 244.

The Supreme Court of Indiana, in *Thrawley* v. *State,* 153 Ind. 375, (55 N. E. Rep. 95,) has determined this ques-

tion the other way, holding that the reputation of the deceased for peaceableness is admissible as original evidence against one charged with murder where self-defense is relied upon. That decision does not appear to be supported by any authority and we are not impressed with the reasoning upon which the conclusion rests. In *Carr* v. *State,* 21 Ohio Cir. Ct. 43, in commenting on this case it is said that the Supreme Court of Indiana is alone in holding such evidence competent. Our own investigation will not justify us in a statement so broad, and we therefore prefer to limit our observation to this: that it appears to us that the decision in Indiana is opposed to the great weight of authority on this question.

Paul Messenie, brother of deceased, testified as a witness for the prosecution. On cross-examination he was asked:

Q. "How tall are you?

A. "Five foot ten.

Q. "Your brother was a much bigger man than you?

A. "Yes, sir.

Q. "Weighed more?

A. "He did.

Q. "Your brother was a very muscular man?

A. "He was well capable of taking care of himself.

Q. "I am afraid the jury can't hear you, Mr. Messenie.

A. "Yes, sir; he was a strong man. * * *

Q. "Did he ever do any boxing?

A. "No, sir.

Q. "Wasn't he known as a sparring partner for Jack Root, the pugilist?

A. "Never."

This is the only testimony that in any way related to the character of the deceased, and it is this evidence that counsel for the State claim it was competent to rebut by proving the general reputation of the deceased as a peaceable and quiet man.' It will be observed that the evidence

quoted has no bearing whatever upon the character of deceased as to being peaceable and quiet or quarrelsome and turbulent. It relates only to his size and strength. That a man is large and strong does not tend to prove that he has a violent temper, or was quarrelsome, aggressive and addicted to fighting. A man may be large and strong and yet be peaceable and quiet, or he may be small in stature and be very quarrelsome, violent and belligerent. Proof that deceased was peaceable and quiet did not rebut testimony that he was large and strong. To rebut means to contradict by counter-proof or repel by opposing testimony. Evidence to rebut the proof that deceased was large and strong would be required to be confined to a contradiction of that proof, and this would necessarily limit it to evidence that the fact was otherwise than as testified to on behalf of the plaintiffs in error.

Counsel for the State rely upon *Davis* v. *People,* 114 Ill. 86, as an authority supporting the ruling of the court in admitting the testimony complained of. That was a murder case and the defense was self-defense. It was complained in this court that the trial court erred in permitting the prosecution to prove, in rebuttal, the character of the deceased as a peaceable man. The court said (p. 95): "It seems defendant had proved deceased was regarded as a 'good man in a fight,' and many other things that tended to show his character as a quick-tempered, violent and rash man. After such evidence had been admitted the prosecution was permitted to prove the character of deceased as a peaceable man, and this is the evidence that is complained of as being incompetent and hurtful. What defendant proved concerning deceased was equivalent to proving his general character as a violent and fighting man, and there was certainly no serious error, if there was any at all, in permitting the prosecution to rebut such evidence of character by proving, as was done, his general character as a quiet and peaceable man."

It is clear from this statement that the proof made in the *Davis case* by defendant as to the character of the deceased was of an entirely different nature from the proof here made.   In the case before us there was no proof made by plaintiffs in error tending to show that deceased was "a good man in a fight," or "a quick-tempered, violent and rash man," or evidence "equivalent to proving his general character as a violent and fighting man."   If such proof had been offered, then the evidence introduced by the State, under the authorities hereinbefore cited and many others that might be noted, would have been competent, but under the state of this record we are of opinion proof of the peaceable and quiet character of deceased was incompetent.   The rule to be deduced from the authorities upon this subject is, that the character of the deceased as a peaceable and quiet man is presumed to be good until the contrary appears, and unless defendant introduces evidence attacking the general reputation of the deceased in that respect no evidence upon that subject is admissible; and this is true notwithstanding self-defense may be interposed and relied upon.   It necessarily follows that if the proof offered in rebuttal by the State was incompetent it was erroneous for the court to instruct the jury as to the weight to be given it.

Other errors insisted upon need not be considered.   Any question that may exist as to whether issue was properly joined by a plea of not guilty can be obviated on the next trial by requiring an arraignment and plea before the trial is entered upon.

For the errors committed in admitting this evidence and in giving this instruction the judgment of the criminal court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

Mr. CHIEF JUSTICE HAND, dissenting:

I do not agree to the conclusion reached by the majority opinion in this case.   The killing of Joseph F. Messenie by

the plaintiffs in error was admitted, and the only defense interposed by them in the trial court was that they took his life in self-defense. Messenie, some hours before he was killed, and Olson, had a fight upon a street car in the city of Chicago, and thereafter they met upon one of the public streets of the city, Kelly, Maloney and Nyquist being in company with Olson. A second fight ensued, in which the four assaulted Messenie, and during the fight Messenie was shot and killed by Olson or one of his companions. It was claimed by plaintiffs in error the deceased was the aggressor on both occasions, and proof was brought out by the plaintiffs in error, upon the cross-examination of a brother of the deceased, that the deceased "was a strong man,"—that he was "capable of taking care of himself." In view of the contention of the plaintiffs in error and the testimony brought out on cross-examination by the plaintiffs in error, I am of the opinion proof that the deceased was a quiet and peaceable man was properly made under the authority of *Davis* v. *People,* 114 Ill. 86. I think the jury were clearly justified in finding, from the evidence, that the deceased was attacked by Olson and his three companions,—four in all,— as he was on his way home, in company with a friend; that he was knocked down, and that one of the Olson party shot and killed him while he was down, and that the jury were right in finding, from the evidence, that the four men, one of whom was armed with a revolver, were not justified in taking the life of the deceased, who was not armed, on the ground that they were acting in self-defense. There was no element of self-defense in the case. If, therefore, the evidence that the deceased was a quiet and peaceable man was improperly admitted, the evidence of guilt of the plaintiffs in error was so strong that the judgment should not be reversed by reason of the admission of such evidence, as the law is well settled in this State, if the competent proof clearly justifies a verdict of guilty in a criminal case a judgment of conviction should not be reversed by this court by reason

of the admission of incompetent evidence, if it appears, as it does here, the admission of the evidence complained of could not reasonably have affected the result of the trial. *Jennings* v. *People*, 189 Ill. 320.

Mr. JUSTICE SCOTT, dissenting: In my judgment the admission of evidence that the deceased was a quiet and peaceable man does not warrant reversal in this case.

Mr. JUSTICE CARTER, dissenting: Even though the evidence in question be considered improper, its admission, in my judgment, should not reverse this case.