54 So.2d 794

**SUGGS v. STATE.**

1 Div. 614.

Court of Appeals of Alabama.

March 13, 1951.

Rehearing Denied April 24, 1951.

Harry Seale, of Mobile, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant stands convicted of manslaughter in the first degree under an indictment charging murder in the first degree.

The appellant was the step father-in-law of the deceased, William Anderson Edwards. They and their respective families occupied the same house, the appellant, his wife, and his wife's grandchild occupying the downstairs rooms, while the deceased

and his wife, who was the daughter of appellant's wife, and their two children occupied the upper floor. To all purposes the apartments were separate, except that both used the single front entrance.

The entire evidence tends to establish the following facts, more or less without dispute. On the night of the homicide the deceased came along a street near his home. His wife observed him from an upstairs room and could tell he had been drinking. He knocked at the front door downstairs and Mr. Suggs, the appellant, admitted him to the house. The deceased went on upstairs, but his wife refused to admit him to the apartment. The deceased then called to the appellant who called to deceased's wife to admit the deceased, and she then did so. Deceased and his wife quarrelled, deceased cursing her. She came downstairs and went into a room with her mother. The deceased came downstairs and began to curse his wife's family, and his wife in particular. He asked her if she wanted to live with him any longer, and went back upstairs and packed his tools and clothing. He came back downstairs, paused long enough to curse his wife some more, and then kicking the front screen open he departed, carrying his tool chest and locker trunk with him.

He went around the corner to the home of Mr. H. B. Lee. Mr. Lee and a Mr. Heale were sitting on the front porch. The deceased asked to leave his locker trunk and tool chest at Mr. Lee's, but Mr. Lee told him he had no place to keep them and Mr. Heale suggested he check them at a bus station. The deceased then said "I will go back around there and kill every damn one of them," and picking up his luggage returned the way he had come.

In about fifteen minutes after he had left the deceased again showed up at appellant's home. He called to appellant to let him in. Appellant went into the hallway, carrying a single barrelled shotgun with him. He told deceased to return the next day when he was sober; that he (appellant) had to work the next day and could not be up all night with such foolishness. The decedent then called appellant a lying son of a bitch, and told him he guessed the reason appellant would not let him in was that he (appellant) wanted to go upstairs and sleep with decedent's wife. Appellant told deceased this was not true. Then according to appellant the decedent " 'wrested' back there and swung," and the appellant without aiming fired the shotgun from the waist. The shot went through the screen door and entered deceased's left side at about the belt line. In the opinion of Mr. Grubbs, the State toxicologist, the shot was made at close range, and the course of the shot in deceased's body indicated that the gun had been fired at about the height of the wound and parallel with the ground, or floor.

Numerous witnesses, both for the State and the defense, testified as to deceased's bad reputation for peace and quietude. There is also abundant evidence to the effect that deceased had been arrested twice for carrying a switch blade knife since his marriage to appellant's step daughter, and that he had been arrested for drunk and disorderly conduct; that he had on numerous occasions threatened to kill the appellant, and on one occasion had bought a switch blade knife for the avowed purpose of using it on appellant; appellant had had deceased arrested once and decedent had stated that if God spared him he would kill the appellant. Appellant knew of deceased's conduct, and of course of the threats.

The most compelling evidence against this appellant is the fact that he shot the deceased through a screen door. This of itself would justify the jury's verdict and support the judgment entered in accordance therewith, in so far as the facts are concerned.

After careful consideration of this entire record it is our conclusion however, that the appellant was probably injured in his substantial rights by the refusal of certain of his requested written charges, particularly in view of the court's very brief oral instruction to the jury.

In its oral charge the lower court stated in part: "Now, as to the law of self-defense there are three constituent elements and they must all co-exist. Before a man can set up self-defense he must be free

from fault in bringing on or encouraging the difficulty; second, he must have been in peril of his life or of great bodily harm, or in apparent danger of his life or great bodily harm; and third, he must have retreated if he could do so without endangering his life or his safety."

The court also further instructed the jury to the effect that where threats by deceased have been communicated to a defendant he has a right to act more promptly in defending himself than he ordinarily would.

Four written charges were given at appellant's request. None of these charges cover the defendant's right to reasonably act on the appearance of things.

The entire defense centered on justification of appellant's act by reason of self-defense. An integral part of such defense was appellant's right to act as a reasonable man on the appearance of things at the time, taken in the light of all the evidence, or his right to act on danger apparent to a reasonable man, if he honestly believed such danger to exist.

The court's brief reference to this right was merely his statement defining the elements of self-defense, wherein the court said "he must have been in peril of his life or of great bodily harm, or in apparent danger of his life or great bodily harm." This was not, in our opinion, sufficient to instruct the jury as fully as they should have been instructed in view of the issues and the evidence.

Refused charge 16 tended to supply this deficiency in the court's oral charge in the aspect above referred to. Its refusal was error. Dykes v. State, 34 Ala.App. 216, 39 So.2d 21, certiorari denied 252 Ala. 15, 39 So.2d 24; Abercrombie v. State, 33 Ala. App. 581, 36 So.2d 111; Glass v. State, 201 Ala. 441, 78 So. 819.

We note that in Howard v. State, 239 Ala. 274, 194 So. 857 a charge of almost exact import as refused charge 16 was considered, except that the charge in the Howard case (charge 9) stated if the defendant shot the deceased "under a bona fide belief that he was in impending danger of limb or of suffering grievous bodily harm, * * *." In holding that this charge was properly refused the court said only: "Refused charge 9 as set out in the record is incomplete by the omission of the material word 'suffering.'" Examination of the original record discloses that the charge was as it appears in the report, which charge does contain the word "suffering." In view of this obvious contradiction we are unable to determine on what basis this charge was disapproved. Certainly, as far as we can see, the rational import of the charge is the same whether the word "suffering" appears in it or not. The materiality of the word "suffering" in the charge therefore completely eludes us.

Be that as it may, certiorari of the Dykes case, supra, having been denied, we consider it the last expression of the Supreme Court on the validity of this charge.

Refused charge 20 should have been given, and its refusal was error. Wilson v. State, 243 Ala. 1, 8 So.2d 422 (charge 1).

Other refused charges are made the basis of asserted error by appellant's counsel. We have examined these charges, and in our opinion their refusal did not constitute error for the reason that they were either covered by the oral charge of the court, or other given charges, or were either abstract under the evidence, invasive of the province of the jury, or misleading.

Reversed and remanded.