283 So.2d 453

**Leroy GRADY**

v.

**STATE.**

**7 Div. 191.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rowan S. Bone, Gadsden, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and J. Robert Ramsey, Sp. Asst. Atty. Gen., Dothan, for the State.

CLARK, Supernumerary Circuit Judge.

Appellant was tried on an indictment, to which he pleaded not guilty, charging him with murder in the first degree of William Kinzalow. The jury found him guilty of manslaughter in the first degree and fixed his punishment at imprisonment in the penitentiary for a term of ten years. The trial court rendered judgment and sentence accordingly, from which this appeal was taken.

Testimony of a State's witness was that in the early evening of June 1, 1963, he and several others, including defendant-appellant and William Kinzalow, were gambling at dice in a garage operated by Kinzalow; defendant won "lots of money," and Kinzalow demanded that defendant pay him money that Kinzalow claimed defendant owed him for work on an automobile, which defendant denied; a heated argument ensued, and Kinzalow grabbed a large amount of money out of the hands of defendant, much larger than the amount of $14.00 that Kinzalow claimed defendant owed him; Kinzalow pulled a gun out of his pocket, and the defendant then left the scene. In about half an hour, defendant returned with a gun, a 45 automatic pistol; when Kinzalow saw defendant coming, Kinzalow went for his gun, and shots were fired. When the shooting commenced, all present, except defendant and Kinzalow, dispersed. The operator of the business next door heard the shots, went toward the garage and met defendant walking out of the garage with a 45 automatic pistol in his hand. This witness testified that he then went into the garage and found Kinzalow on the floor, and that Kinzalow had been shot. He did not see a gun in the garage. Neither he nor any other witness testified that the gun in the hand of Kinzalow was ever seen thereafter.

Etowah County Coroner Noble Yocum testified that he examined the body of Kinzalow the evening of his death; that deceased had been shot in the arms, chest, and abdominal region; that there "was a total of eleven different wounds" on the body and six or more of them were entrance wounds.

Defendant was indicted in September 1963. A writ of arrest was promptly issued, but it was not executed until December 1971.

Police Captain James A. Bragg testified that in December 1971 he located defendant in jail in Atlanta, Georgia, and returned him to Gadsden; that after defendant had been fully advised of his constitutional rights defendant made and signed a written statement, which was introduced in evidence. That part of the statement relating what occurred after defendant left the garage was as follows:

". . . Then I left out and went back over in the project and started drinking whiskey. The next thing that I knowed [sic] I woke up in Cartersville, Georgia at a friends house. They call him [S]late. I never heard him called by anything else. I went across the street and got me a half pint of whiskey. I called someone here in Gadsden, Alabama and asked them what had happened, and they said, or someone had said that I had killed Kinzalow. I stayed over in Cartersville two or three days and then went to Atlanta. . . ."

Evidence offered by defendant was limited to the testimony of four witnesses, whose testimony related exclusively to the subject of defendant's character or reputation, which they considered good.

Although the point is not raised on appeal, a written motion was made by defendant, on the day of trial but before the jury had been selected, "to abate, dismiss and strike this cause", setting forth five grounds, three of which asserted invalidity in the warrant of arrest. The other two grounds were as follows:

"4. For that there was a systematic exclusion of the members of the jury panel from which the Grand Jury was drawn which returned this indictment.

"5. For that there was a systematic exclusion of the jurors which will try this matter before a trial jury."

Evidence offered by defendant on the motion consisted of a transcript of the testimony of the clerk of the Jury Commission of Etowah County that she had previously given in another case. The court overruled the motion.

■ Although testimony on the trial of the case reveals that defendant is a Negro and the victim was a white man, the record in this case, including the questions to and answers of the clerk of the Jury Commission, which was the only evidence offered on the motion to abate, etc., fails to contain any charge, suggestion, or hint to the effect that there was an exclusion, purposeful or otherwise, from the jury roll of, or any kind of discrimination against, any person, persons or groups of persons. There was evidence to the effect that the jury box had not been refilled since 1968, although names had been added to the jury roll and cards bearing the names placed in the jury box. Cards of jurors who had served since 1968 had not been placed back in the box. The evidence indicates that there was a failure to comply precisely with Title 30, § 20, Code of Alabama, 1971 Cumulative Pocket Part:

"The jury commission shall meet in the courthouse at the county seat of the several counties annually, between the first day of August and the twentieth day of December, and shall make in a well-bound book a roll containing the name of every citizen living in the county who possesses the qualifications herein prescribed and who is not exempted by law from serving on juries. . . ."

The evidence does not show with satisfactory clarity the extent of any variation from the statutorily prescribed procedure for the maintenance of an appropriate jury roll and placing cards in the jury box, but it does show that there was no contention made by anyone that the constitutional rights of anyone, particularly this defendant, were in any way impaired. If they had been in this case, it would clearly be our duty to rectify the injustice, in accordance with the uniform policy of the appellate courts of Alabama, as well as the Supreme Court of the United States, but we would not be authorized to presume discrimination, even if it were charged. Swain v. State, 275 Ala. 508, 156 So.2d 368; Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759. It necessarily follows that we cannot do so in the absence of any semblance of a contention that there was discrimination. Out of fairness to appellant, it should be said that there is no such contention on this appeal. The trial court was not in error in overruling defendant's motion.

Each of appellant's four specific assertions of error is based upon the refusal by the trial court of one of defendant's requested charges numbered 33, 34, 37 and 39.

■ Charge 33 would have precluded a conviction of defendant upon the hypothesis of a bona fide belief that his life was in danger and reasonable cause for believing that he was in imminent danger at the time deceased was shot. The charge pretermitted consideration of freedom from fault and the qualified duty to retreat as essential elements of the defense of self defense, and it was properly refused. Gardner v. State, 40 Ala.App. 276, 111 So. 2d 916; Cauley v. State, 33 Ala.App. 557,

36 So.2d 347; Ford v. State, 33 Ala.App. 134, 30 So.2d 582.

Charge 34 is similar in most respects to Charge 7 in Bowman v. State, 35 Ala.App. 420, 47 So.2d 657, in which the court stated:

"It appears the authorities support the view that if the question of retreat is not involved the charge should be given, otherwise it should be refused. We adhered to this theory in the case of Doswell v. State, 34 Ala.App. 546, 42 So.2d 480. See also, Bell v. State, 20 Ala.App. 425, 104 So. 443; Huff v. State, 23 Ala.App. 426, 126 So. 417."

The question of the duty to retreat was clearly involved in this case. It should be noted also that the charge is faulty as applied to the facts in this case in that it refers twice to "the prosecuting witness" instead of to the deceased.

Any question as to the propriety of the refusal of Charge 37 should have been laid to rest by what was stated by Justice Harwood, then Presiding Judge of the Court of Appeals, in Petty v. State, 40 Ala.App. 151, 110 So.2d 319 (in discussing Charge 8 there—the same in all material respects as Charge 37 here), and quoted with approval by Justice Merrill in Griffin v. State, 284 Ala. 472, 225 So.2d 875, as follows:

" 'In the first place, charge 8 omits all reference to duty to retreat. This omission would justify its refusal. King v. State, 233 Ala. 198, 171 So. 254; Danley v. State, 27 Ala.App. 402, 173 So. 648; Early v. State, 31 Ala.App. 488, 18 So.2d 873; Seekers v. State, 35 Ala.App. 40, 44 So.2d 628; Freeman v. State, 37 Ala. App. 623, 74 So.2d 513.

" 'Refusal of the charge is further justified by its omission of any reference to freedom from fault in bringing on the difficulty. Ford v. State, 33 Ala.App. 134, 30 So.2d 582; Cauley v. State, 33 Ala.App. 557, 36 So.2d 347; Coleman v. State, 37 Ala.App. 406, 69 So.2d 481.' "

A more serious question is presented as to defendant's requested Charge 39, as follows:

"The Court charges the jury that if the defendant shot the deceased under a bona fide belief that the defendant was in impending danger to life or limb, and that he had, under all circumstances, reasonable cause to believe that he was in imminent danger at the time the shooting was done, it would be immaterial whether there was such danger or not."

The charge has a long history, beginning apparently with Kennedy v. State, 140 Ala. 1, 37 So. 90, in which the refusal of the charge was held to constitute reversible error. Chief Justice McClellan made it clear in the opinion in the case that the charge was limited to an aspect of only one of the elements of a valid defense of self-defense and that it did not preclude a conviction in the absence of other essential elements of the defense. With the possible exceptions of Gipson v. State, 262 Ala. 229, 78 So.2d 293, and Howard v. State, 239 Ala. 274, 194 So. 857, the charge has been uniformly approved since *Kennedy*, supra.

In considering the same charge (Charge 37 in this case) in Suggs v. State, 36 Ala. App. 66, 54 So.2d 794, the court held that a refusal of the charge required a reversal. In doing so, it was noted that the principle stated in the charge was not covered by other instructions of the court, that the statement in the oral charge "he must have been in peril of his life or of great bodily harm, or in apparent danger of his life or great bodily harm" did not constitute sufficient coverage. We now turn to the question of whether in the instant case there was sufficient coverage by other instructions.

Like *Suggs,* the oral charge here was inadequate, but unlike *Suggs,* four written charges were given in this case on the subject of the sufficiency of reasonably apparent danger or peril as distinguished from actual or real peril or danger.

Given Charge 35 was as follows:

"35. I charge you, gentlemen of the jury, that it is not necessary that the danger to life or limb or great bodily harm must be real. It need not be actual; but if it would present itself to a reasonable man that the danger was apparent to him, as a reasonable man, that he would suffer great bodily harm or danger to life or limb, he would be entitled to act on that apparent danger, and not [sic] as if he were in real danger."

The charge makes no allusion to shooting, as does refused Charge 39, but as there was no violence involved other than shooting, it cannot be said with reason, we think, that there could have been any misunderstanding about Charge 35 as to its applicability to the act of shooting, or any doubt that the imminent peril or danger requisite to self-defense does not have to be a real or actual peril or danger. The charge made it clear that belief that there is such peril or danger under circumstances that cause a reasonable person to have such belief, meets the requirement and that it is immaterial whether it is the one kind of peril or danger or the other. Some defect is to be found in Charge 35, but it is more favorable to defendant than it would have been if it had been absolutely correct. Given Charge 44 is to the effect that if the evidence satisfied the two requirements of freedom from fault and the qualified duty to retreat and was such as "to reasonably lead the defendant to believe the deceased was about to inflict some great bodily harm upon the person of the defendant" and that "the defendant, acting upon such reasonable belief of great bodily harm, fired the gun at the deceased and killed him, then the jury should acquit the defendant." Charge 38 predicated an acquittal upon a reasonable doubt as to "whether the defendant acted upon a well-founded and reasonable belief that it was necessary to shoot the deceased to save himself from great bodily harm or death, or that he shot before such impending necessity arose." Given Charge 40 states that defendant was

justified in shooting the deceased "if the circumstances attending the killing of the deceased were such as would justify a reasonable man in the belief that he was in danger of great ·bodily harm or death, and that he could not retreat without adding to his peril." It is our opinion that on the whole, at least, the given written charges were more favorable to defendant than refused Charge 39 and fully covered the rule of law contained in Charge 39. This leads to the conclusion that to reverse the case for a refusal to give Charge 39 would collide with the provision of Title 7, § 273, Code of Alabama 1940 as follows:

". . . The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties . . ."

and many statements of the principle as found in a large number of cases, including Embrey v. State, 283 Ala. 110, 214 So. 2d 567; Guenther v. State, 282 Ala. 620, 213 So.2d 679; Harris v. State, 48 Ala. App. 723, 267 So.2d 512, and Hawes v. State, 48 Ala.App. 565, 266 So.2d 652.

■ Photographs taken at the scene of the alleged homicide and portraying the body of the victim as he lay on the floor were admitted into evidence. They are no more horrendous than is to be expected of pictures of anyone who has been recently shot by a pistol as indicated by the testimony in the case. The applicable principle is well settled. The photographs constituted evidence relevant to the issues in the case. Without distortion they could hardly have been rendered less pleasing to the sense of sight. They were correctly admitted into evidence. This conclusion is fully supported by Judge McElroy in 2 McElroy, The Law of Evidence in Alabama, (2d ed.) pp. 123–125 § 207.01(2) and authorities there cited.

We have considered the entire record as required by Title 15, § 389, Code of Alabama 1940 and conclude that there is no prejudicial error therein and that the judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Honorable Leigh M. Clark, Supernumerary Circuit Judge, serving as Judge of this Court under Section 2 of Act. No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the court.

The judgment below is hereby

Affirmed.

All Judges concur.