(96 South. 636)

## KING v. STATE. (7 Div. 814.)

(Court of Appeals of Alabama. Feb. 6, 1923. Rehearing Denied March 6, 1923.)

**1. Criminal law ⬅966342—Accused's motive may be shown.**

Accused's motive is always a legitimate subject of inquiry, though evidence thereof is not indispensable nor an element of the burden of proof on the prosecution.

**2. Homicide ⬅166(3), 167(3)—Cross-examination of defendant and another's testimony as to threats against class to which deceased belonged held admissible.**

In a murder prosecution, recross-examination of defendant as to statements a week or 10 days before the killing that he would get some of the persons, of whom deceased was one, who signed a petition to relieve defendant's brother-in-law from complying with a judgment against him in a prosecution for assaulting his wife, and testimony as to such statements by the person to whom they were made, held admissible as tending to show defendant's animus toward deceased, his motive, and threats against deceased as one of a class.

**3. Criminal law ⬅699—Course and character of debate largely in sound discretion of trial court.**

In prescribing the course and character of the debate allowed on the trial of a case, much must be committed to the sound discretion of the trial court.

**4. Criminal law ⬅719(1)—Statement beyond limits of fair discussion must be of fact unsupported by evidence, pertinent to issue, or naturally tending to influence finding.**

For a statement to be outside the limits of fair discussion by counsel, it must be made as of a fact unsupported by any evidence, pertinent to the issue, or naturally tending to influence the jury's finding.

**5. Homicide ⬅118(1)—Accused not relieved of duty to retreat from public road because of necessity of turning team loose.**

That one charged with murder had his team of mules and a wagon on the public road at the time of his difficulty with deceased did not relieve him of the duty to retreat if he could without increasing his peril, though he would have been compelled to turn loose his team; the immunity from retreat applicable to a man's home not applying to a public road.

**6. Criminal law ⬅309—No presumption of good or bad character.**

There is no presumption as to character being good or bad.

**7. Criminal law ⬅829(1)—Refusal of charge covered by charges given not error.**

Refusal of a charge correctly stating the law is not error if the same principles have been fairly and substantially covered by charges given.

**8. Homicide ⬅300(7, 14)—Requested charge as to defendant's right to stand ground held erroneous as not predicated on evidence and pretermitting imminent peril.**

In a murder prosecution, a requested charge that if defendant was free from fault in bringing on the difficulty, and there was no reasonable mode of escape without increasing his peril, he had the right to stand his ground and return blow for blow, even to taking deceased's life, held erroneous as not predicated on the evidence and as pretermitting imminent peril of grievous bodily harm or death.

**9. Criminal law ⬅761(2)—Homicide ⬅300 (4, 6)—Requested charge on facts to be considered in determining defendant's guilt held erroneous as argumentative, singling out certain evidence, and assuming facts.**

In a murder prosecution where accused claimed self-defense, a requested charge that the jury could consider all the surrounding circumstances, the distance from where deceased was shot to where he passed deceased, the distance that the latter followed him, the relative position of each at the time of the killing, etc., in determining defendant's guilt or innocence, held erroneous as argumentative, singling out part of the evidence, and assuming facts which were for the jury.

**10. Homicide ⬅300(3)—Charge that defendant had right to carry pistol if his life was threatened held erroneous as abstract.**

In a murder prosecution, a requested charge that defendant had a legal right to carry a pistol for his protection if his life was threatened held erroneous as abstract and otherwise objectionable.

**11. Homicide ⬅300(6, 12)—Charge held erroneous as omitting elements of self-defense and singling out part of evidence.**

In a murder prosecution, a requested charge that, if deceased was striking at defendant with a brake pole, the fact that defendant shot him with a pistol theretofore concealed made no difference, held erroneous as misleading, in that it

omitted all the elements of self-defense and singled out a part of the evidence.

**12. Criminal law. 🔑857(1)—Jury must consider and predicate findings on all the evidence.**

It is the jury's duty to consider all the evidence and predicate its findings accordingly.

Appeal from Circuit Court, DeKalb County; W. W. Haralson, Judge.

Gus King was convicted of murder in the second degree, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Gus King, 209 Ala. 446, 96 South. 639.

The following charges were requested by defendant and refused by the court:

"(1) I charge you that, if you believe from the evidence in this case that at the time the difficulty occurred the defendant was in the public road driving his mules to a wagon, then he was under no duty to retreat from the road or leave his wagon.

"(2) I charge you that, if you believe from the evidence in this case that at the time the difficulty took place the defendant was going along the public road driving his wagon, and if he was free from fault in bringing on the difficulty, then he was under no duty to flee from the road or his wagon, before he struck in his own defense.

"(3) I charge you that, if you believe from the evidence that the defendant was free from fault in bringing on the difficulty, and if he was in the public road with his wagon, and if you further believe that at the time he fired the shot he was menaced by the deceased in a dangerous and threatening attitude in such a manner as to lead a reasonably prudent man so situated to honestly believe that he was in imminent peril of life or great bodily harm, then the defendant was under no duty to flee from the public road and his wagon, before striking in his own behalf.

"(4) I charge you that the defendant is presumed to be a man of general good character until the contrary is shown by the evidence. When, however, the defendant becomes a witness in his own behalf, the state may show it, if it can, that he is a man of general bad character; there is testimony here as to his character for truth and veracity, but it is limited to truth and veracity, and the presumption of general good character is still with the defendant, and you will so consider it."

"(6) If defendant was free from fault in bringing on the difficulty, did nothing or said nothing to encourage it, and there was no reasonable mode of escape without increasing his peril, then no duty rested upon the defendant to stand and take the assaults of deceased, but he had the right to stand his ground and return blow for blow, even to the taking of the life of deceased, and defendant would not be guilty."

"(8) I charge you, gentlemen of the jury, that in determining the guilt or innocence of the defendant you have a right to take into consideration all the surrounding circumstances, the distance from where the deceased was shot at the rock wall up the road where the buggy and wagon passed, the distance, if any, that the deceased followed defendant, the side of the road where the deceased was killed, the relative position each was in at the time of the killing; gentlemen of the jury, all this is with you.

"(9) I charge you, gentlemen of the jury, that in this case the law presumes the defendant to be a man of good general character.

"(10) I charge you that the defendant had a legal right to carry a pistol for his protection if his life had been threatened.

"(11) I charge you that, if you believe from the evidence that Webster had the brake pole and was striking at King with it, then the fact that King shot him with a pistol which was concealed up to that time does not make any difference in this case."

Isbell & Scott, of Ft. Payne, for appellant.

As defining the doctrine of self-defense, see Mitchell v. State, 60 Ala. 26; Burton v. State, 141 Ala. 32, 37 South. 435; Gilmore v. State, 141 Ala. 51, 37 South. 359. Counsel argue for error in the particulars discussed in the opinion, but without citing additional authorities.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

It is always permissible to impeach a witness by showing conflicting statements. 14 Mich. Ala. Dig. 1172. Evidence showing threats is admissible. Anderson v. State, 79 Ala. 5; Jordan v. State, 79 Ala. 9; Harrison v. State, 79 Ala. 29; Newton v. State, 92 Ala. 33, 9 South. 404. A person has not a right to carry a pistol for his protection, if his life has been threatened, except for purposes of defense, and the jury have the right to consider this fact by way of mitigation. 1 Mayf. Dig. 194.

BRICKEN, P. J. The defendant admittedly killed Daniel Webster, the person named in the indictment, by shooting him with a pistol. For this act he was indicted by the grand jury and charged with the offense of murder in the first degree. Issue was joined upon his plea of not guilty, the trial resulting in a verdict by the jury as follows:

"We the jury find the defendant guilty of murder in the second degree and fix his punishment at imprisonment in the penitentiary for fifteen years."

Judgment and sentence based upon this verdict followed, from which defendant appeals.

The defendant relied upon self-defense as a justification of his act in killing Webster.

A large number of witnesses were examined upon the trial of this case, but the trial throughout proceeded with but few objections and exceptions. We will discuss these questions in the order in which they appear in the record.

The testimony in the record tends to show that the defendant had a brother-in-law by the name of Walker; and that Walker had committed an assault and battery against Mrs. Walker; that the defendant as stated by him had been assisting in a prosecution of Walker for the mistreatment of his wife; and that the deceased, Daniel Webster, and Roy Copeland, one of the principal witnesses for the state, together with other parties, had signed a petition to relieve Walker from complying with the terms of the judgment in the criminal case against him, and for this reason ill feeling had arisen between the defendant and Webster, the deceased. It is evident that this matter was the real cause of the trouble leading up to the killing of Webster by defendant.

[1, 2] On recross-examination of defendant, and over his objection and exception, he was required to answer that he knew a man by the name of Bernard Fowler. The Solicitor then asked him:

"Now, didn't you tell him in a conversation at his mail box this side of Adamsburg about a week or ten days before the killing, when you were talking to him about the people who signed that petition for your brother-in-law, that if they didn't mind you would get some of the damn fellows yet?" To which he answered: "No, sir; I did not tell him that."

The Solicitor then asked him:

"Now, didn't you tell him just a few days before this happened—talking about those who signed that petition—that you would get some of the damn folks yet?" The defendant answered: "I never had any conversation with Fowler at his mail box. I did not say anything like that."

The witness Bernard Fowler was then introduced, and over the objection of the defendant testified:

"I know Gus King (the defendant). I had a conversation with him about a week or ten days before the killing of Daniel Webster, at my mail box this side of Adamsburg."

The Solicitor then asked this question:

"I will ask you if you had a conversation with him concerning the people who signed a petition for his brother-in-law, and if in that conversation he said 'If those folks didn't mind their own business he would get some of the God damn folks yet.'" The witness answered, "Yes, sir."

And over the objection of defendant this witness further testified that the defendant also said, "If they don't mind what they were doing, he would get some of the sons of bitches yet."

The exceptions reserved to the court's rulings in this connection are without merit. The testimony was material as tending to show the animus of the defendant to the deceased for having signed the petition in question, and it also tended to show the motive which actuated the defendant in taking the life of deceased.

The motive of accused is always a legitimate subject of inquiry on the trial of one charged with crime, and while evidence showing motive is not indispensable, and is not an element of the burden of proof resting upon the prosecution, yet it is always permissible to adduce testimony which tends to show the motive of the accused.

Moreover, the testimony above referred to was admissible as tending to show threats by defendant against deceased. The trouble resulting in the killing of Webster arose about the signing of a petition by him and other parties; and this testimony related to threats by defendant as against all the persons who had signed the petition, and under the rule laid down in the following cases the court properly allowed the jury to pass upon these threats:

In Harrison v. State, 79 Ala. 29, the court said:

"Threats made by the defendant against the deceased, or against a class to which the deceased belonged, and prima facie referable to him, though his name was not mentioned, are competent and admissible as evidence against him, and it is for the jury to determine whether they, in fact, had reference to the deceased."

See, also, Anderson v. State, 79 Ala. 5; Jordan v. State, 79 Ala. 13; Sharp v. State, 193 Ala. 22, 69 South. 122; Patterson v. State, 202 Ala. 65, 79 South. 459.

[3, 4] The next question presented relates to objections and exceptions to a portion of the argument made to the jury by associate counsel for the state. It has well been said that a presiding judge is called on to perform a most delicate and responsible duty, when required to interfere with the freedom of argument, which is the privilege of counsel. Much must be committed to his sound discretion, as to the course and character of the debate which should be allowed on the trial of a case. The general rule established in this respect is, in order that a statement may come within the rule which prescribes the limits of fair discussion, "the statement must be made *as of fact*; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury." Cross v. State, 68 Ala. 476. An examination of the argument here complained of convinces us that it does not fall within the above rule, and that the court did not err in overruling the objections made in this connection.

[5] Charges 1, 2, and 3 were bad. The immunity from retreat, which under the law is applicable to a man's home, does not apply to a public road. These charges assert this erroneous proposition and were therefore properly

refused. Pillar v. State, 15 Ala. App. 576, 74 South. 398. The fact that the defendant had his mules and wagon on the public road at the time of the difficulty did not relieve him of the duty to retreat if he could have done so without thereby, increasing his peril; it is no excuse for failure to retreat that defendant would have been compelled to turn loose his team. Finch v. State, 81 Ala. 41, 1 South. 565.

[6] Charge 4 refused to defendant does not state the law, relative to the character of defendant; for in the absence of proof there is no presumption as to character being good or bad. In other words, the law raises no presumption as to whether character is good or bad. There was no error in the refusal of this charge. Griffin v. State, 165 Ala. 29, 50 South. 962.

[7] Refused charge 5 correctly states the law, but its refusal by the court was not error for the reason that this charge was fully covered by charge 3, given at the request of defendant. It is not error to refuse a charge containing a correct proposition of law, if the same principles of law have been fairly and substantially covered by the oral charge of the court, or by the given charges.

[8] Charge 6 refused to defendant is not predicated upon the evidence in the case, and for this reason was properly refused. This charge also pretermits imminent peril of suffering grievous bodily harm or death by defendant at the hands of deceased, and is also faulty in this respect.

Refused charge 7, if not otherwise bad, is fairly and substantially covered by given charge 12, and by the oral charge of the court.

[9] Charge 8 is argumentative and was properly refused. Moreover, this charge singles out a part of the evidence and assumes as facts certain things which under the testimony were issues for the determination of the jury.

Charge 9 was bad, and is subject to the same criticism hereinabove indulged as to refused charge 4; as there stated, no presumption as to character is raised by law in the absence of proof on this question.

[10] Refused charge 10 is abstract. It is otherwise objectionable. 1 Mayfield, Dig. pp. 194, 195. Its refusal was not error.

[11, 12] Charge 11 refused to defendant is misleading. It omits all elements of self-defense and singles out a part of the evidence only. It is the duty of a jury to consider all the evidence in a case and to predicate its findings accordingly.

We find no error in any of the rulings of the court. The record being also free of error, the judgment of conviction pronounced in the lower court is affirmed.

Affirmed.