562 So.2d 1348 (1988)
Paul Edward MURRY
v.
STATE.
3 Div. 419.
Court of Criminal Appeals of Alabama.
April 12, 1988.
As Corrected on Denial of Rehearing May 10, 1988.
On Return to Remand July 21 and November 17, 1989.
Rehearing Denied December 29, 1989.
Certiorari Quashed April 20, 1990.
*1349 Rick Harris and L. Gilbert Kendrick of Moore, Kendrick, Glassroth, Harris, Bush & White, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and P. David Bjurberg and William D. Little, Asst. Attys. Gen., for appellee.
Alabama Supreme Court 89-558.
PATTERSON, Judge.
The appellant, Paul Edward Murry, was indicted for the capital offense of the murder of Mary Pearl McCord, a police officer, while she was on duty, or because of some official or job-related act or performance of Officer McCord. Ala.Code (1975), § 13A-5-40(a)(5). His first conviction and sentence of death for this offense were affirmed. Murry v. State, 455 So.2d 53 (Ala.Cr.App.1983). However, this decision was reversed by our supreme court on the ground that the trial court erred in failing to instruct the jury that, in the event the jury found Murry guilty of murder, the murder could be raised to a capital offense only if Murry knew that the victim was a peace officer on duty or recklessly disregarded facts putting him on notice that the victim was a peace officer. 455 So.2d 72 (Ala.1984). A new trial was ordered. 455 So.2d 82 (Ala.Cr.App.1984).
This new trial began on October 15, 1985, and on October 18, the jury found Murry guilty as charged. After a sentencing hearing held in accordance with§§ 13A-5-45 *1350 and -46, the jury recommended, by a unanimous vote, that Murry be sentenced to life imprisonment without possibility of parole. Thereafter, the trial court conducted a sentencing hearing pursuant to § 13A-5-47 et seq., made specific findings on the existence or nonexistence of the aggravating and mitigating circumstances, and sentenced Murry to death by electrocution.
The prosecution presented the following facts and circumstances of the capital offense for which Murry was charged and convicted. On January 5, 1982, about dusk, Officer Tony Burks drove his partner, Officer McCord, to Traction Avenue to show her several places where drugs were sold. She had been in the Vice and Narcotics Division for only two months. They were travelling in a four-door, hardtop, tan Chevrolet Malibu with a small police antenna on the back of the trunk and with plain black-walled tires and small, cheap hubcaps, and they were dressed in plain clothes. As they drove down Traction Avenue at a speed of 10 to 15 miles per hour, a small group of people scattered when the group saw the car. A Lisa Branum, who was in her car, was there to buy marijuana. Usually, the dealers on Traction Avenue approach the buyer in the buyer's car and ask what the buyer needs. As the police vehicle drove by at approximately 5:30 p.m. or 6:00 p.m., Ms. Branum knew it was a "cop undercover" vehicle, so she told the two men with her that they had better leave because the "heat" was there. Everyone else scattered, too, because most of them noticed that the car was an unmarked police vehicle.
Officers Burks and McCord continued down Traction Avenue until Burks noticed a black male, who Burks identified at trial as Murry, standing behind a vehicle parked partially off the road and trying to wave them down. Murry was holding, in his right hand, several manila envelopes, which Burks recognized as the kind he had always discovered to contain marijuana. When Burks stopped at Murry's vehicle, McCord got out on the passenger side of the vehicle. As she was getting out, she said to Murry, "I can't believe you're trying to sell police officers drugs." Burks put the vehicle's transmission in "park," got out, and observed some small, brown manila envelopes on the trunk of Murry's vehicle. As he reached the area behind Murry's vehicle where Murry and McCord were standing, he observed McCord and Murry standing about four to five feet apart and pointing guns at each other. When Burks stopped, he was also standing four to five feet from Murry. He heard McCord tell Murry that Murry was under arrest for possession of drugs. Immediately, Murry looked at Burks and warned him that if he tried to shoot Murry, Murry would shoot McCord first. At that time, Burks drew his weapon, identified himself as Investigator Burks with the Montgomery Police Department, and told Murry that they would have to take him to jail. Then, Murry repeated his warning that if Burks tried to shoot him, he would shoot McCord first, and he continued pointing his gun at McCord.
When McCord started moving away from Burks, Murry also moved to continue facing her. Then, Burks grabbed Murry's right wrist, and Murry grabbed the cylinder of Burks's weapon, which prevented Burks from firing his weapon. They tusseled and, during the struggle, Burks begged Murry to release him so they could talk. Murry responded with the warning that "he was going to take [Burks] with him." Burks repeated that he was Investigator Burks with the Police Department. During the struggle, Murry fired his weapon. Burks received a .22 shot in his wrist and another shot made a hole in his shoulder holster, but did not enter his body. This latter shot was fired with the weapon either in contact with Burks's body or a half-inch away. Burks yelled to McCord to shoot, but she did not. At this time, she was 25 to 30 feet from the two men. After she did not shoot, another shot was fired. During the struggle, all the shots in Murry's gun were fired. In addition, sometime during the struggle, Murry grabbed Burks's weapon again and Burks fired it, but the shot did not hit Murry.
*1351 Then, Burks lost his weapon to Murry and, as he was trying to get to the police vehicle to get a shotgun, Murry shot him in the lower back and he fell. Murry ran toward a nearby house, but returned a few seconds later and stood over Burks. As he pointed Burks's weapon at Burks, Murry said, "Mother fucker, you ain't dead yet?" Burks did not respond. Then, Murry dropped the weapon by Burks's feet and yelled for someone to call the police. He grabbed something off the trunk of his car and ran toward a nearby house. Burks immediately grabbed his weapon and crawled toward the police car. When he reached the vehicle, he observed McCord on the driver's side of the vehicle, positioned half in and half out of the vehicle, with her right arm extended toward the police radio. She had been wounded by a gunshot to her left, upper, anterior chest. Shortly thereafter, she died. A subsequent autopsy revealed that the wound had been inflicted by a .22 caliber bullet (fired by a .22 caliber weapon) which travelled through her chest in the following direction: from left to right, front to back, and downward.
Burks summoned help and after several police officers arrived, Murry approached them with his hands in the air and stated, "I shot them." He was taken into custody and, as he was being transported to police headquarters, he stated that he was an employee of the City Sanitation Department, that he had shot two people, and that he thought the two people he had encountered were trying to rob him. When the officer asked, "Well, you knew they were police officers," Murry responded, "No, I didn't know or I wouldn't have done it." Murry further admitted that he shot them with the gun that he had taken away from the black male with whom he had been struggling. Murry's statement was made after he had been informed of his Miranda rights, and it was voluntary.
Meanwhile, the evidence technician collected evidence at the scene. Burks's .357 caliber revolver was discovered between the two vehicles. Near it lay four live .357 cartridges, and the gun contained only two spent cartridges in its cylinder. The technician noticed that the dirt behind Murry's vehicle had been disturbed. He further discovered Burks's cap and handcuffs in the nearby ditch and, within arm's reach of these items, a pill box containing what later tested to be three Diazepam and five phenobarbital pills. A .22 caliber RG revolver was also seized. Its cylinder held six expended.22 cartridge cases. A subsequent examination of this gun by a firearms expert confirmed that it had been recently fired.
Murry's vehicle was also searched. A paper bag containing plant residue that tested to be marijuana was seized from the trunk. Cigarette papers were found in a pocket of a coat seized from the passenger compartment, and a small manila envelope was found in a pocket of a shirt seized from this same area. An analysis of the contents of this envelope revealed that they consisted of 1.7 grams of marijuana.
Back at the police station, it was discovered that Murry had been shot. He explained that, when he saw that the black male had drawn his weapon, he pulled his small caliber gun from his pocket, and that as he did so, his weapon discharged. Murry continued by stating that he threw his weapon into the ditch at the black man's order; that, when he turned around, he grabbed the other man's gun; that they wrestled over the gun; and that, when he took it away from the other man, he shot the man and, then, shot the woman.
Murry made another statement while en route to the hospital. It began at 7:45 p.m. with the explanation and waiver of his Miranda rights. He stated that, when the man and woman stopped by his car, one of them ordered him to put his hands up; that, after Murry explained that he did not have anything, the male grabbed him and put a pistol to his neck; that he shot himself while retrieving his pistol from his pocket; that he grabbed the stranger's gun and told him to drop it because he did not want any trouble; that he kept shooting in the air to summon help, called out to a friend that he was being robbed, and told the stranger to stay back; that, when the stranger pushed him, he dropped his gun and they wrestled over the stranger's *1352 weapon; that he obtained possession of the weapon; and that, sometime during this confrontation, the woman said she was going to get help. Murry also proclaimed that neither the man nor the woman represented that they were police officers; that the male never told him he was under arrest; that he did not recognize their car as a police car; that he had no "dope"; that the only illegal thing in his possession was his pistol; and that he never shot at anyone.
A firearms expert studied the gunpowder patterns on the shirt and coat Murry had been wearing on the night in question. He determined that a gun had discharged in close proximity to the shirt, within six inches, and that a gun discharged within three inches of the coat. From his observations, he concluded that the gun which made the patterns could not have been fired while pointed up in the air.
At trial, Murry gave the following version of the incident: Although he sold drugs on Traction Avenue, he did not go there that evening to sell. As he was travelling down Traction Avenue, he stopped near the gambling house and decided to put brake fluid in his car. When he opened the glove compartment to get a tool, he saw his pistol, which he took to put in the trunk. While he was standing by the trunk of his car, another car stopped and Burks jumped out, pulled a pistol, and said, "Hold it." Murry responded, "You hold it." Then, a woman got out of the car, and Murry warned, "If you shoot me, I'm going to shoot her." The woman was also holding a gun. Murry had, in his hand, the pistol he was about to put into the trunk. Then, Burks put his pistol up to Murry's neck; Murry grabbed Burks's gun; and a scuffle started. Murry called for his friend, at the gambling house, but no one came, so he shot in the air several times. He shot himself when he tried to shoot Burks's hand to make Burks drop his gun. After Murry gained possession of Burks's weapon and while Burks was scrambling to get to his car, Murry shot him because he was scared and he was trying to get away from the two people who, he thought, were trying to rob him. He intended to harm Burks when he shot him. However, he did not know that either of the two was a police officer. Neither said that they were police officers. When he approached Burks after he shot Burks, he saw a police badge on Burks's belt and said, "Damn, I done fucked up." He, then, dropped Burks's pistol and fled to a nearby house where he took off some of his outerwear to keep from being identified. However, shortly thereafter, he surrendered to the police.
Murry also testified that, at the time of the murder, he worked for the Sanitation Department. In connection with his job, he went to the city lot where all city vehicles, including unmarked police cars, are fueled. He had seen other unmarked cars, but knew they were police vehicles because uniformed officers were in them. Burks was also called by the defense and testified that he did not think that, when they drove up, Murry recognized the car as an undercover car or recognized the two occupants as police officers.

I
Murry contends that the evidence was insufficient to establish the element that he intended to kill McCord and, also, the element that he knew McCord was a police officer on duty or recklessly disregarded facts putting him on notice that McCord was a police officer. Referring to the legal principles governing this same contention on the appeal of Murry's first trial, Murry, 455 So.2d at 62-63, we find that there was legal evidence presented to the jury from which the jury could have found, by fair inference, that Murry intentionally killed McCord. See also Ala.Code (1975), § 13A-11-71, cited in Harrell v. State, 470 So.2d 1303, 1307 (Ala.Cr.App. 1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985) (which states, in pertinent part, "In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime *1353 of violence"). In making reference to the legal principles which were utilized by the court in Murry's first appeal to find that the evidence presented in the first trial was sufficient to establish that Murry intentionally killed McCord, we are in no way implying that we have resolved the instant issue on the facts presented in the first trial. Rather, we have relied solely upon the facts of the second trial in determining this issue. We are mindful that, "[s]ince [Murry] was guaranteed a new trial, he is also guaranteed a new appeal that would be based solely on the facts and evidence presented in his second trial." Ex parte Cade, 521 So.2d 85, 88 (Ala.1987).
Just as intent was a question for the jury, 455 So.2d at 53, so was the question of Murry's knowledge of the victim's status or his reckless disregard of facts which should have informed him of the victim's status. 455 So.2d at 78. This latter question was properly presented to the jury, for the evidence relating to this specific element was controverted.

II

A
Murry contends, for the first time on appeal, that the following comments made by the prosecutor in his rebuttal closing argument constituted reversible error:
"And I'm going to ask you to do something here today. I've never done this before. If you don't believe Tony Burks today, you acquit this man and you put him on the streets. Turn him completely aloose. But if there is one among you who believes that Tony Burksand count me with you  and if there are twelve of you who believes in Tony Burks and believe he is telling the truth as opposed to this self-admitted pennyante gambling dope peddler, then find this defendant guilty of capital murder." (Emphasis added.)
It was inappropriate for the prosecutor to reveal his personal opinion as to the credibility of Tony Burks, the prosecution's main witness. See King v. State, 518 So.2d 191 (Ala.Cr.App.1987); Lynn v. State, 543 So.2d 704 (Ala.Cr.App.1987).
"Counsel may argue to the jury the credibility of witnesses as long as he confines his argument to the evidence and the fair inferences to be drawn therefrom, but he may not go beyond the evidence and state as fact his personal knowledge as to the truthfulness or untruthfulness of the testimony of a witness."
Stevens v. State, 506 So.2d 373, 375 (Ala. Cr.App.1986) (quoting McGhee v. State, 41 Ala.App. 669, 671, 149 So.2d 1, 3 (1962), aff'd, 274 Ala. 373, 149 So.2d 5 (1963)).
However, defense counsel, at no time, offered any objection to the prosecutor's comment, requested any cautionary instructions, or moved for a mistrial. Thus, assuming that the remark by the prosecutor was error, the issue before us is whether it was plain error. In interpreting and applying Alabama's plain error rule, the Alabama Supreme Court has looked to the Federal Rules of Criminal Procedure definitions of "harmless error" and "plain error" (Fed.R.Crim.P. 52) and to the cases interpreting the federal plain error rule. See Ex parte Harrell, 470 So.2d at 1312-13; Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983). In Harrell, the court followed the Womack court's holding that the plain error rule is intended to apply to "particularly egregious error" which would result in a miscarriage of justice if a reversal was denied. The Harrell court also followed Womack's conclusion that this interpretation of plain error follows the federal plain error rule, as stated in United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981): "`Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." See also Hooks v. State, 534 So.2d 329 (Ala.Cr.App.1987) (following Harrell and Womack).
Since we are to review the prosecutor's remark for plain error, as interpreted by federal case law, we have sought guidance in federal cases that have treated similar *1354 comments under the federal plain error standard. One such case is United States v. Swafford, 766 F.2d 426, 428-29 (10th Cir.1985), wherein the court reviewed the pertinent issue, as follows:
"Mr. Swafford requests reversal based on prosecutorial misconduct. The government argued during rebuttal that the victim [Arthur Tillman] wanted to have the charges dropped but was not able to do so, and was afraid he would be whipped. This was objected to but the objection was overruled. With no further objections on this subject the prosecutor continued in his argument referring to Mr. Tillman:
"`When he took the witness stand, he told you the truth. He fa[c]ed the heat and he got up here and he told you the truth.'
"We continue to hold that vouching by an attorney as to the veracity of a witness is improper conduct and an error which this court will carefully review. United States v. Ludwig, 508 F.2d 140 (10th Cir.); United States v. Martinez, 487 F.2d 973 (10th Cir.). Both case law and the Code of Professional Responsibility identify a lawyer's assertion of personal opinion during trial as an example of improper advocacy. See ABA Code of Professional Responsibility DR 7-106(C)(4).
"The dispositive issue on review is whether attorney's comments rise to the level of `plain error' under Rule 52(b) of the Federal Rules of Criminal Procedure. United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 1042-43, 84 L.Ed.2d 1 [1985]; United States v. Ludwig, 508 F.2d 140, 143 (10th Cir.[1974]). Remarks can constitute plain error if they `undermine the fundamental fairness of the trial and contribute to a miscarriage of justice.' Young, 470 U.S. at 16, 105 S.Ct. at 1047. The Court in Young, 470 U.S. at 11, 105 S.Ct. at 1044, suggested on review:
"`[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.'
"When reviewing the record the Court also suggested that courts `consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly.' Young, 470 U.S. at 12, 105 S.Ct. at 1045.
"We stress the dangers involved in an attorney's expression of personal opinion, especially a prosecutor. A jury could gain the impression from such conduct that the prosecutor knows of evidence excluded from its consideration. As the Court warned in Young, 470 U.S. at 18-19, 105 S.Ct. at 1048,
"`the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.'
"Ernest Swafford and the government pinpointed witness credibility as a major issue in the case. Arthur Tillman's character and ability to tell the truth were placed on the line during defense attorney's closing statement: `Arthur couldn't tell the truth.' The prosecutor's reference to Mr. Tillman's credibility flowed from his interpretation of the evidence and permissible inferences. He argued to the jury that a witness who had been beaten, threatened, admitted being `scared' and requested federal protection might have found it easier to affirm defendant's story than to stick to his version of the facts.
"Reviewing the prosecutor's remarks within the context of the entire record we find they did not erode the defendant's right to a fair trial. Nor do we find indications that the jury could have been improperly influenced. The court instructed the jury before and after arguments concerning the weight and significance closing arguments should receive.... We conclude that in this atmosphere the prosecutor's statements did not create a `plain error' requiring reversal of Ernest Swafford's conviction."
In considering the probable effect the instant remark would have had on the *1355 jury's ability to judge the evidence fairly, "defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant." Young, 470 U.S. 1, 12, 105 S.Ct. 1038, 1044 (1985). As the defense counsel and the prosecutor did in Swafford, Murry and the prosecutor pinpointed witness credibility as a major issue in the instant case. Burks's credibility was put into question, during closing arguments, by defense counsel when defense counsel argued the following:
"Now, [Murry and Burks] got in a death struggle. Now, my client's version, I submit, is the truth about how the struggle started.... And my version, our version, of the facts is the truth."
At another point, counsel argued,
"You know, my client could have lied about it. We didn't have to tell you that he was smoking that morning. We didn't have a thing to hide. We didn't have to tell you that he had been smoking that other day. He didn't have to get up here and tell you. He told you the truth."
In taking the prosecutor's remark in the context of these remarks by the defense counsel, we find that the prosecutor's remark did not amount to plain error. See United States v. Brooks, 786 F.2d 638, 642 (5th Cir.), cert. denied, 479 U.S. 855, 107 S.Ct. 193, 93 L.Ed.2d 126 (1986) (wherein the court held that plain error did not occur when the prosecutor argued that he did not believe the defendant, after defense counsel had argued that the defendant told the truth and attacked the credibility of the prosecution witnesses); United States v. Smith, 700 F.2d 627, 633-34 (5th Cir.1983) (wherein the court held that prosecutor's statements that a government's expert witness had no reason to lie and that "[w]e're not in the business of doing that kind of thing, lies of that nature" were not plain error, but were responsive to defense counsel's argument that the witness lied); United States v. Parker, 549 F.2d 1217, 1223 (9th Cir.), cert. denied, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977) (wherein the court found that the prosecutor's comment that the witness did not lie, but had been honest, did not amount to plain error, but was in response to defense argument that witness had lied).
In addition, we are confident that the remark did not undermine the fairness of the trial, because any prejudice which might have resulted from the comment was cured by the court's extensive cautionary instructions in its oral charge to the jury. See United States v. Sawyer, 799 F.2d 1494, 1507 (11th Cir.1986), cert. denied, 479 U.S. 1069, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987). See also Lynn v. State, 543 So.2d at 707 (wherein the court, in reviewing a death case, determined that the prosecutor's comment that he believed what the witness had told him was cured by immediate instruction). In its oral instructions, the court repeatedly instructed the jury that the jury is the factfinder in the case. It also, instructed that the jury is the sole judge of credibility or believability of each and every witness; that the arguments of counsel are not evidence; that it is up to the jury alone to determine what evidence it will accept; and that no bias for any party can affect the jury in arriving at its verdict. With these instructions, we are confident that the jury was not influenced, by the remark, to stray from its responsibility, especially when contrasted against the brevity and isolated nature of this remark.
While we are certainly concerned with the recognized dangers of such a remark, see Young, 470 U.S. at 18-19, 105 S.Ct. at 1048, we find that they are not implicated to the degree requiring a finding of plain error. The prosecutor, by his remark, in no way, suggested that, in asserting his personal belief in Burks's testimony, he was relying on information outside the evidence presented to the jury. Compare King v. State, 518 So.2d at 192-95. Taken within context, his comment merely "flowed from his interpretation of the evidence and permissible inferences." Swafford, 766 F.2d at 428. See also Young, 470 U.S. at 19, 105 S.Ct. at 1048. Moreover, we find that, when the remark is considered in the context of defense counsel's arguments and subsequent instructions by the court, it did not "induce the jury to trust the *1356 Government's judgment rather than its own view of the evidence." Id. at 18-19, 105 S.Ct. at 1048. Finally, while the failure to object certainly does not preclude review in a capital case, it does weigh against any claim of prejudice. See, e.g., Ex parte Bush, 431 So.2d 563 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983).
"Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding," Young, 470 U.S. at 11-12, 105 S.Ct at 1044, and, after reviewing the remark within the context of the trial and against the entire record, we find that the prosecutor's remark does not rise to the level of plain error. "[T]he plain-error exception ... is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" Id. at 15, 105 S.Ct. at 1046 (quoting United States v. Frady, 456 U.S. 152, 163, n. 14, 102 S.Ct. 1584, 1592, n. 14 (1982)). The comment before us was not such a "particularly egregious error" as to create any miscarriage of justice or undermine the fundamental fairness or integrity of the trial. See United States v. Gwaltney, 790 F.2d 1378, 1385-86 (9th Cir.1986), cert. denied, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987). However, we stress, as we have so often, that by holding that the prosecutor's remarks did not deny Murry a fair trial, we do not intend to condone them.

II

B
Murry also contends that the following closing remarks made by the prosecutor constituted reversible error:
"Okay, so we can agree he's a dope dealer. He's a dope smoker. He's a kind of person that goes out to Traction Avenue on at least several times, finally he admitted and it's uncontradicted, and in fact he said, yes, I kept it in the trunk of my car when I was selling out of my car on the street on Traction Avenue....
"....
"And I submit to you that we have to consider a couple of things in looking at his statement. One is who is he? Who is the defendant? He has an interest in the case. He's the one on trial. Secondly, look at his lifestyle. He's a dope dealer. He makes money selling dope to people. He doesn't care. I'll sell it; I need a little money to gamble with, so, yes, I'll sell a little. I would have sold it that night if I had had any. Oh, he came so close. He even takes it to work. He's a dope dealer of the worst sort. He doesn't care. He doesn't care about who it affects."
These comments were also not the focus of an objection, a motion for mistrial, or a request for instruction.
Murry testified that he could not count the times he had sold drugs on Traction Avenue in front of the house where he gambled; that he bought the marijuana, which he would eventually sell, from several places, "all over Montgomery"; that he keeps the drugs he sells in the trunk of his car; that he only sells that quality, which he himself smokes; that he sells to supplement his income; that he went to Traction Avenue, that particular day, to gamble, but he had no money with which to gamble; that, if he had had any drugs that day, he would have sold them; and that he had smoked marijuana at work that morning. His testimony reflected that he is very familiar with the usual packaging and standard amounts of marijuana sold.
We find that, based upon this testimony alone, the prosecutor's comments were not error. "The test of a prosecutor's legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment in argument to the jury." Carroll v. State, 405 So.2d 163, 167 (Ala.Cr.App.1981). "It is ... clear that when evidence of collateral crimes has been properly admitted it may be commented upon by the prosecution in closing argument." LaBarber v. State, 455 So.2d 941, 944 (Ala.Cr.App.1984) (citations omitted).

III
After the jury began its deliberations in the guilt phase, it submitted the following *1357 two questions to the trial court: "Must a policeman show/display his badge before making an arrest?" and "Can a lawful arrest be made by just telling the defendant he is under arrest?" To the first question, the court answered, "No"; to the second, it answered, "Yes." Although the record reflects no objection to the court's responses, Murry contends on appeal that, "[w]hile these are correct statements of the law in the abstract, they were misleading and prejudicial to the defendant when applied in [his] case." (Brief, p. 52-53). He argues that the instructions implied that McCord's statement"You are under arrest"was sufficient to satisfy the scienter element.
We reject, as mere conjecture and speculation, Murry's allegation that the charge had the proposed effect. It is more likely that the jury made the inquiries in regard to Murry's defense theory that McCord was killed in sudden passion caused by sufficient lawful provocation. In instructing the jury on this theory, the court stated, in pertinent part, the following:
"The law in this state is that an attempted unlawful arrest may or may not constitute sufficient provocation. The question of whether there was an attempted lawful or unlawful arrest in this case is, of course, a question of fact to be determined by you from all of the evidence in this case touching on whether or not the officers identified themselves and all other evidence surrounding the circumstances in this case. An attempted arrest is an attempt to curtail or limit a person's freedom of movement. A police officer may arrest a person without a warrant under the following circumstances: For any public offense committed in that officer's presence, or when he has reasonable cause to believe that the person arrested or attempted to be arrested has committed a felony. When arresting a person without a warrant, the officer must inform of his authority and the cause of arrest, except when the person is arrested or attempted to be arrested in the actual commission of a public offense."
We find that, in light of this portion of the oral charge, the answers to the stated inquiries were not abstract and were properly answered.
"This court has opined on many occasions that the jury is entitled at all times to have access to the trial court for such additional instructions as they may require. A trial judge is not required to repeat any other part of his oral charge when answering a specific inquiry from the jury.
"This court has further held that, when the jury calls for additional instruction and clearly delineates the area of its request, `it is the recommended practice for the trial court to remain within such area.' Moreover, such a practice does not give added weight or place undue emphasis on that portion of the oral charge."
Thomas v. State, 455 So.2d 278, 281 (Ala. Cr.App.1984) (citations omitted). "It is assumed that the jury will consider the previously given instructions along with those given in the supplemental charge." Davis v. State, 440 So.2d 1191, 1195 (Ala.Cr.App. 1983), cert. denied, 465 U.S. 1083, 104 S.Ct. 1452, 79 L.Ed.2d 770 (1984). Moreover, on two other occasions when the court gave the jury supplemental instruction upon request, the court cautioned the jury to consider the supplemental instruction within the context of the entire charge.

IV
Murry contends that the trial court erred in denying his requested written instruction designated as "No. 4." This charge was properly refused because it was not predicated on the evidence, but was abstract. See Alldredge v. State, 453 So.2d 1332, 1336 (Ala.Cr.App. 1984). Additionally, we note that the requested charge contained more than one distinct proposition. Where a requested charge states several distinct propositions of law, the trial court may properly refuse it if some of them are fully covered in its oral charge to the jury. Nolen v. State, 376 So.2d 1145, 1147 (Ala.Cr.App.), cert. denied, 376 So.2d 1148 (Ala.1979).
*1358 Murry further contends that the court erred in denying his requested written instruction "No. 7," pertaining to the justified use of deadly force in self-defense, which states the following:
"If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm and that deadly force was necessary to repel such danger, he would be justified in using deadly force in self-defense, even though it may afterwards have turned out that the appearances were false. If these requirements are met he could use deadly force even though there was in fact neither purpose on the part of the other person to kill him or do him serious bodily harm, nor imminent danger that it would be done, nor actual necessity that deadly force be used in self-defense."
While we recognize that charges similar to the one at issue have been deemed proper even though they have omitted any references to the doctrine of retreat and the question of freedom from fault, Grady v. State, 51 Ala.App. 143, 283 So.2d 453, 456-57 (1973), we find that the instant charge was properly refused because the second portion singles out a part of the evidence and assumes, as facts, certain considerations which, under the testimony, were issues for the jury. See King v. State, 19 Ala.App. 153, 96 So. 636, cert. denied, 209 Ala. 446, 96 So. 639 (1923). We also find that the charge was properly refused because the principle stated in the requested instruction was substantially and fairly covered in the court's charge, Grady, 51 Ala.App. at 147, 283 So.2d at 457; the court charged as follows:
"[A] person may use deadly physical force to defend himself if he reasonably believes from all of the circumstances that another is using or about to use deadly physical force on him. If the defendant had reasonable grounds to believe from all of the circumstances and actually did believe that he was in imminent danger of death or serious bodily injury, and that deadly physical force was necessary to repel that danger, he would be justified in using deadly physical force in self defense even though it may afterwards have turned out that the appearances were false. There must be a belief of imminent peril and urgent necessity to slay in self defense. Though it may be based on appearances, the belief must be well founded and honestly entertained."

V
Murry also contends that the trial court erred in excusing two venirepersons for their views on capital punishment. However, the jury recommended a sentence of life without parole. "The holding in Witherspoon [v. Illinois], 391 U.S. 510 [88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) ], is not applicable where the jury recommends a sentence less than the death sentence. Bumper v. State of North Carolina, 391 U.S. 543 ... [88 S.Ct. 1788, 20 L.Ed.2d 382 (1968) ]." Eady v. State, 284 Ala. 327, 328, 224 So.2d 876, 877 (1969) (quoted in Neelley v. State, 494 So.2d 669, 680 (Ala.Cr.App. 1985), aff'd, 494 So.2d 697 (Ala.1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987)). See also cases cited in Neelley, 494 So.2d at 680, and Bracewell v. State, 506 So.2d 354, 358 (Ala.Cr.App.1986). It follows that, since Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), simply clarified Witherspoon, 469 U.S. at 424, 105 S.Ct. at 852. Witt also offers no ground for reversal.

VI
Murry contends that the trial court erred, in its sentencing order, in failing to specify what non-statutory mitigating circumstances it found to be supported by the evidence. Murry is correct in his contention that, although the court acknowledged in its order that Murry had offered evidence in support of several specified non-statutory mitigating circumstances, the court failed to make any findings on the existence or non-existence of some of these circumstances. For example, the court made no finding on the existence or non-existence of Murry's work record as a non-statutory mitigating circumstance. In addition, the court apparently addressed and *1359 rejected several of Murry's proposed non-statutory circumstances by finding that "Murry was not a person of good character." We must reject the attorney general's argument that this general finding is sufficient for us to infer that the court considered and rejected the more specific circumstances. For instance, we cannot assume, from the court's general finding that Murry was not of good character, that the trial court addressed and rejected the proposed mitigating circumstance of Murry's cooperation with the law enforcement authorities.
Moreover, § 13A-5-47(d) requires that "the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in section 13A-5-49, each mitigating circumstance enumerated in section 13A-5-51, and any additional mitigating circumstances offered pursuant to section 13A-5-52." The court only addressed itself to one aggravating circumstance.[1] Although the trial court explicitly rejected three statutory mitigating circumstances, it did not address those remaining enumerated statutory mitigating circumstances. Moreover, in our review, we have noticed that the court did not enter written findings on some of the additional non-statutory mitigating circumstances offered by Murry. The trial court recognized more mitigating circumstances in its oral charge to the jury than it did in its sentencing order. More specifically, the following mitigating circumstances were recognized in the court's oral charge, but they were not subsequently addressed in the court's sentencing order: (1) the offense was committed under circumstances which the defendant believed to be a moral justification or extenuation of his conduct, even though the circumstances which the defendant believed to be a justification or extenuation for his conduct were not sufficient to constitute a defense to the crime; (2) the defendant's prior family history would reasonably be expected to contribute to his non-criminal conduct; (3) his family loved and cared for him; and (4) the circumstances attending the commission of the offense reflect the lack of heinousness or atrociousness. In his argument during sentencing, Murry's counsel also interjected the possible mitigating circumstances that the offense was committed "under extreme emotional-type circumstances."
Based upon the order before us, we cannot determine whether the court considered the evidence offered by the defendant and then determined that it was insufficient or whether the court merely precluded it without consideration. See Ex parte Cochran, 500 So.2d 1179, 1187 (Ala. 1985); Hooks v. State, 534 So.2d 329 (Ala. Cr.App.1987); Duren v. State, 507 So.2d 111, 120 (Ala.Cr.App.1986), aff'd, 507 So.2d 121 (Ala.), cert. denied, 484 U.S. 905, 108 S.Ct. 249, 98 L.Ed.2d 206 (1987). Moreover, as we read the court's findings, we conclude that the trial court did not find the existence of any mitigating circumstance. In light of this conclusion, we are puzzled by the court's repeated reference to its weighing of "mitigating circumstances." We must remand this cause for the trial court to enter specific written findings, in accordance with § 13A-5-47(d), because, without knowing what the trial court did, we are unable to properly review Murry's sentence. Cochran.
Murry also correctly points out that the following conclusion found in the order cannot be assumed to be correct: "Under the court's charge and the law, the jury found beyond a reasonable doubt that ... Murry knew McCord was a police officer." Under the court's charge and law, it can be as readily assumed that Murry recklessly *1360 disregarded facts putting him on notice that McCord was a police officer.
After searching the record, pursuant to A.R.A.P. 45A and considering the alleged errors asserted on appeal, we conclude that Murry received a fair trial. However, due to the deficiencies in the sentencing order, we remand this cause with directions that the trial court enter specific written findings concerning the existence or non-existence of the aggravating and mitigating circumstances and, once again, decide the appropriate punishment by reweighing the proper aggravating circumstance or circumstances against any proper mitigating circumstance. The court's new sentencing order should be promptly transmitted to this court.
We pretermit discussion of the remaining three issues until then.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
This case was remanded on April 12, 1988, for the trial court to enter specific written findings, in accordance with § 13A-5-47(d), Code of Alabama 1975, to facilitate our review of Murry's sentence. We gave the following specific directive:
"[D]ue to the deficiencies in the sentencing order, we remand this cause with directions that the trial court enter specific written findings concerning the existence or nonexistence of the aggravating and mitigating circumstances and, once again, decide the appropriate punishment by reweighing the proper aggravating circumstance or circumstances against any proper mitigating circumstance. The court's new sentencing order should be promptly transmitted to this court."
The trial court's final order on remand was filed on January 6, 1989, approximately seven months after the certificate of remand was issued. This lapse of time was apparently due to the volley of motions, briefs, and objections between the parties after the cause was resubmitted to the trial court for redrafting and reweighing of its sentencing order.
First, on May 31, 1988, Murry requested a new sentence hearing pursuant to § 13A-5-47(c), which mandates that, "[b]efore imposing sentence the trial court shall permit the parties to present arguments concerning the existence of aggravating and mitigating circumstances and the proper sentence to be imposed in the case." The trial court denied this motion on its correct finding that we had not ordered such a hearing and on its finding that such a hearing would be unnecessary. See Cochran v. State, 500 So.2d 1188 (Ala. Cr.App.), aff'd, 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987). Thereafter, Murry filed another motion to recuse, which was denied.
On June 29, 1988, the trial court rendered its first sentencing order after remand, wherein it found, among other findings, the following: (1) the aggravating circumstance that Murry murdered police officer Mary McCord while she was on duty and was engaged in a job-related act; (2) the aggravating circumstance that the capital offense was committed for the purpose of preventing a lawful arrest; (3) the aggravating circumstance that the capital offense was committed to hinder the enforcement of the Alabama Uniform Controlled Substances Act; and (4) the lack of the statutory mitigating circumstance that Murry has no significant history of prior criminal activity, which the court based on Murry's three New York misdemeanor convictions, two Alabama misdemeanor convictions, and Murry's admissions to using and selling narcotics, to gambling, and to unlawfully carrying a pistol. Thereafter, the state filed a motion to amend the sentencing order, calling for deletion of the trial court's consideration of the aggravation averred in the indictment as an aggravating circumstance and, also, deletion of consideration of Murry's non-conviction criminal activity in reviewing the applicability of the mitigating circumstance of Murry having no significant history of prior criminal *1361 activity. Murry then filed a response to the state's motion, asserting that the court erroneously rejected his offered non-statutory mitigating circumstance that the offense was committed under circumstances that Murry believed to be "moral justification for or extenuation of his conduct." At this time, Murry again moved for the trial court's recusal on the ground that the trial court had, on three prior occasions, sentenced Murry to death, which, he argued, makes it "more difficult for the Court to consider this life and death question on a clean state."
On July 27, 1988, the trial court held a hearing on these motions and Murry's response wherein more suggestions and objections to the sentencing order were made. Murry suggested a new non-statutory mitigating circumstance: the existence of some doubt of guilt, doubt between reasonable doubt and complete certainty, better known as "residual doubts" about guilt. See Franklin v. Lynaugh, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). The state also requested the court to order Murry to announce whether he would ever attempt to invalidate his New York misdemeanors, which had been used by the court to negate the finding of the mitigating circumstance of no significant history of prior criminal activity. The trial court then gave Murry time to investigate the New York misdemeanors and to brief his oral arguments and, also, granted the state time to respond.[1]
In his brief, Murry objected, for the first time, to the trial court's consideration of all of his misdemeanors, on the grounds that they had not been properly proven and that representation by counsel had not been shown; he argued for the consideration of "residual doubts" over Murry's guilt as a non-statutory mitigating circumstance; he opposed consideration of any additional aggravating circumstance; he objected to consideration of the aggravating circumstance that the offense was committed to hinder the enforcement of any law because, he argued, under the instant facts, this circumstance is essentially a duplication of the aggravating circumstance that the defendant committed the offense for the purpose of preventing a lawful arrest; he objected to the imposition of the sentence of death; and he urged the finding of a new non-statutory mitigating circumstance, that Murry's conduct had been good while in prison since his arrest for the instant offense. In a reply brief, the state, in addition to responding to Murry's arguments, urged the court, for the first time, to find the aggravating circumstance that Murry "was previously convicted of ... a felony involving the use or threat of violence to the person," § 13A-5-49(2). The state contended that this finding could be based on Murry's August 1982 conviction for the attempted murder of Tony Burkes, Mary McCord's partner. This attempted murder conviction was rendered after Murry's first trial and sentencing, which was reversed, 455 So.2d 72 (Ala.1984), but before the present trial. The state also urged, for the first time, that the attempted murder conviction alone be considered to negate the statutory mitigating circumstance of Murry having no significant history of prior criminal activity. In response to the state's reply brief, Murry filed a brief on September 19, 1988, objecting to the trial court's consideration of Murry's 1982 conviction for attempted murder, partly on the ground that Murry had not been allowed to present additional evidence pursuant to his motion for a new sentencing hearing.
On December 5, 1988, the trial court entered a new sentencing order. In this order, the court found two aggravating circumstances: (1) Murry was previously convicted of a felony involving the use of violence to the person, the attempted murder of Officer Burks, and (2) the capital *1362 offense was committed for the purpose of preventing a lawful arrest. The court also found that Murry does have a significant history of prior criminal activity, based upon Murry's attempted murder conviction and his two Alabama misdemeanor convictions. The court considered and found the non-statutory mitigating circumstance that the offense was committed under circumstances that Murry believed to be "moral justification for or extenuation of his conduct." The court rejected any consideration of "residual doubts" about Murry's guilt, and it did not mention any consideration of Murry's good conduct while incarcerated.
The events which occurred after our order of remand have not only provided fertile ground for several troublesome issues but have cost much in the way of judicial economy, time, and the appearance of fairness and propriety. Our instructions on remand did not suggest that new evidence be considered or that new arguments concerning the existence of aggravating and mitigating circumstances and the proper sentence be presented. We simply contemplated, as our order clearly indicates, that the trial court would supply the stated deficiencies in his sentencing order on the evidence and arguments as presented at trial, at the sentence hearing before the jury, and at the trial court's sentence hearing. We found no omission of proof or consideration of improper evidence that had to be remedied by a new sentence hearing. Our remand clearly directed merely a revision of the sentencing order and a reweighing, for we explicitly found that the only impropriety was the manner in which the evidence was considered by the court, as reflected by its sentencing order. Compare Mann v. State, 453 So.2d 784 (Fla.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). Our remand was "technically based," and the trial court erroneously expanded the preceedings. See Dougan v. State, 398 So.2d 439 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 367, 70 L.Ed.2d 193 (1981). The remand should not have been considered an invitation to re-open the proceedings for further arguments, especially when Murry was not allowed to present additional evidence.
The trial court indicated its understanding of our instructions by correctly ruling, on Murry's motion, that no second sentencing hearing was ordered by this court. See Ex parte Cochran, 500 So.2d at 1065 (wherein the court ruled that, after reversing for the sentencing order's failure to include specific findings on all evidence of mitigating factors, the trial court did not err in refusing to hold a new sentencing hearing, for the reviewing court considered only the order to be incomplete and, thus, the remand to be necessary to facilitate appellate review). Yet, through numerous motions and briefs, the parties were allowed, in essence, to attempt to introduce additional evidence and to supply additional arguments on circumstances not supported by the evidence before the trial court or clearly not considered by the trial court prior to the time of remand.
Not only was this procedure not directed by this court, it was certainly not contemplated by § 13A-5-53(a), which provides, in part, that "[i]f [this] court determines that an error adversely affecting the rights of the defendant was made in the sentence proceedings or that one or more of the trial court's findings concerning aggravating and mitigating circumstances were not supported by the evidence, it shall remand the case for new proceedings to the extent necessary to correct the error or errors." (Emphasis added.) See also § 13A-5-53(d)(2) (which provides, in part, that this court is authorized to "[s]et the sentence of death aside and remand to the trial court for correction of any errors occurring during the sentence proceedings and for imposition of the appropriate penalty after any new sentence proceedings that are necessary") (emphasis added).
Thus, all considerations arising from the multiple motions and briefs filed after remand, not directed to our remand order, were improper and violative of basic principles of fundamental fairness. More specifically, Murry's prior attempted murder conviction should not have been used to support an aggravating circumstance and to *1363 negate a mitigating circumstance. We recognize that the trial court had not made a finding concerning this aggravating circumstance and, under other facts, it would not be foreclosed from finding this aggravating circumstance, barring no other legal impediment. However, it is abundantly clear that, had the state not requested the court's consideration of the prior conviction to support a finding of the aggravating circumstance and to negate a mitigating circumstance, the court would not have so considered it. The trial court had already issued two sentencing orders wherein it could have considered Murry's attempted murder conviction and the corresponding aggravating and mitigating circumstances, but did not do so. Such was never argued to the jury or to the trial court in the respective sentence hearings; the argument was presented only at "the eleventh hour," after remand. Moreover, in its final order, the trial court admitted, "The State contends that the Court should accept this [attempted murder] conviction as the aggravating circumstance enumerated in § 13A-5-49(2)...." The trial court's proper consideration of this additional aggravating circumstance would have required a new sentencing hearing in order to allow Murry to offer any rebutting or mitigating evidence. However, a new sentence hearing has neither been ordered nor held.
The present posture of this cause demands that we again remand this cause under our original directive. The trial court is to make explicit and specific findings of the existence or nonexistence of the statutory aggravating and mitigating circumstances and any nonstatutory mitigating circumstances, and reweigh them to determine the appropriate punishment. In so doing, the trial court is to consider only that which was before it at the time of our original remand.[2] The trial court's return to remand should be filed within 30 days after issuance of the certificate of remand.
OPINION EXTENDED; REMANDED WITH DIRECTIONS.
All Judges concur.

ON SECOND RETURN TO REMAND
PATTERSON, Judge.
This case was again remanded on July 21, 1989, for the trial court to enter specific written findings, in accordance with § 13A-5-47(d), Code of Alabama 1975, and to reweigh them to determine Murry's appropriate punishment. The trial court followed our instructions and sentenced Murry, on September 25, 1989, to life imprisonment without the possibility of parole.
Because this case is no longer governed by the "plain error" doctrine, A.R.App.P. 45A, we need not address Murry's contention that a portion of the trial court's jury instruction on the element of intent was erroneous, for Murry failed to object. See A.R.Cr.P.Temp. 14. Murry also contends that our reliance on § 13A-11-71 in finding the evidence to be sufficient for conviction is erroneous because, he argues, the statute shifts, to the defendant, the burden of disproving his intent. Although we likewise do not need to address this issue because it was not properly raised before this court, we note that our reference to this statute is dictum; that, even without its consideration, we reach the same result; and that the statute was not included in the trial court's instruction to the jury.
This judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
NOTES
[1] In similar cases, the trial court has been authorized to find the existence of the aggravating circumstance set out in § 13A-5-49(7): "The capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws." See, e.g., Cade v. State, 521 So.2d 80 (1986), on rehearing, December 9, 1986 (Ala.Cr.App.1986), aff'd, 521 So.2d 85 (Ala.1987) (murder occurred while officer was in process of arresting appellant); Crowe v. State, 485 So.2d 351 (Ala.Cr.App. 1984), rev'd on other ground, 485 So.2d 373 (Ala.1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986) (murder occurred while appellant was effecting brother's escape from jail).
[1] It is questionable whether the trial court had any jurisdiction, after the hearing on July 27, to entertain any further motions or briefs and to make any additional rulings, for the record on return to remand, containing the trial court's first sentencing order, was filed with this court on July 28, 1988. Jurisdiction of a case can be in only one court at a time. McKinney v. State, 549 So.2d 166 (Ala.Cr.App.1989). The general rule is that a case should not be pending in a lower and an appellate court at the same time. Id. at 167. Based upon this theory, anything occurring, in the trial court, on July 28 or after, would be a nullity.
[2] We add the following two cautionary notes. First, the trial court should make a specific written finding concerning the existence or nonexistence of each aggravating circumstance. § 13A-5-47(d). Second, in the event that the trial court finds the nonexistence of the statutory mitigating circumstance of § 13A-5-51(l), with Murry's two prior Alabama misdemeanor convictions for disorderly conduct and carrying a weapon unlawfully, the trial court should take note of the holding in Cook v. State, 369 So.2d 1251, 1257 (Ala.1978), that a prior conviction for malicious destruction of property "hardly constitutes `a significant history of prior criminal activity.'"